In re Millard KENNEDY and Glenwodyne Kennedy, Debtors.

CITIZENS BANK OF AMERICUS Formerly Bank of Webster, Movant,

v.

Millard KENNEDY and Glenwodyne Kennedy, Respondents.

Bankruptcy No. 83–20039–AMER.

United States Bankruptcy Court, M.D. Georgia, Columbus Division.

Nov. 13, 1987.

Richard A. Childs, Columbus, Ga., for debtors/respondents.

Ben F. Easterlin, IV, Americus, Ga., for movant.

MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

This Chapter 11 case was filed May 31, 1983 by Millard Kennedy and Glenwodyne Kennedy (hereinafter "Debtors"). Listed on Schedule A–3 "Creditors Holding Security" is a debt to Bank of Webster, which has now been merged into the Movant herein, Citizens Bank of Americus (hereinafter sometimes referred to as "Creditor").

The Debtors filed a Plan and Disclosure Statement on August 25, 1983 which provided that Bank of Webster was a Class 3 secured creditor and provided that the real estate would be delivered to Bank of Webster and Farmers Home Administration less the Debtors' home site and two acres. The Bank of Webster was to retain its first lien security interest in the home site and also to retain its security interest in a separate piece of real estate which was not to be surrendered to the creditors. After the surrendered property was disposed of by the creditors, the remaining claim of Bank of Webster was to be paid over a period of time at a specified interest rate, which was to be adjusted quarterly. The Disclosure Statement stated that the Bank of Webster was secured with a first security interest in the separate tract which was not to be surrendered and a second security interest in the property that was to be surrendered as well as the home site and two acres. It also stated that the Debtors disputed the amount of debt to the Bank of Webster due to a claim that the Bank of Webster had possibly released some security owned by a co-debtor.

The Bank of Webster filed a Proof of Claim after the bar date, but with the express written consent of the Debtors' attorney. The Disclosure Statement was approved by this Court on November 2, 1983. A Modified Plan however was filed December 27, 1983. That Plan provided that within a year the Debtors would sell a 368 acre tract less their house and two acres and would first pay the Farmers Home Administration and then the Bank of Webster from the proceeds of the sale. It also provided that the Bank of Webster would be paid in full on its remaining debt within two years of confirmation of the Plan and that the Debtors would pay the Bank of Webster at least $1,500.00 a month after confirmation. All debts were reaffirmed except those listed as disputed "hereunder."

The Debtors filed an amended, modified Plan on December 30, 1983. It corrected the acreage to be sold to 638 acres and indicated that there was a contract for sale of 475 acres of that tract. The Plan still called for the entire 638 acres less the house and two acres to be sold and the proceeds to be paid to the secured creditors including the Bank of Webster. It still provided that the Bank of Webster would be paid in full within two years and would be paid $1,500.00 a month after confirmation. A Modified Disclosure Statement was filed December 27, 1983 which mentioned a possible Adversary Proceeding to determine the amount of debt to the Bank of Webster. No such Adversary Proceeding was ever filed. This Court entered its order confirming the amended modified Plan on February 8, 1984.

On January 30, 1987 the Debtors filed a motion for an order allowing disbursement of funds held in the registry of the Court after sale of the 475 acres. The Court entered its order on February 24, 1987 as a result of which the Creditor received approximately $123,689.89 to be applied to the Debtors' indebtedness to Creditor. The Debtors filed an interim report with the Court on March 12, 1987 indicating that they were still indebted to the Bank of Webster but that they were having difficulty in determining the balance. The remaining property was not yet sold. They proposed to determine the amount of the balance and make arrangements to satisfy the amount due to the Creditor.

On August 1, 1987 the Creditor filed a motion for relief from the stay. On August 10, 1987 the Debtors filed an Adversary Proceeding against the Creditor objecting to the claim of the Bank of Webster and a counterclaim basically asserting that the Bank of Webster was unsecured because it had failed to pay intangibles tax on the security deeds that it held on the property of the Debtors. The Debtors raised this same defense to the motion for relief from the stay. By consent of the parties, the hearing on the motion for relief from stay was continued and heard on October 16, 1987, at the same time as the Court held its initial Pre-Trial Conference on the Adversary Proceeding, at which time the parties stipulated that, other than as to the alleged requirement of paying intangibles taxes on the security deeds, the Creditor

had made out a prima facie case for relief from the automatic stay, to-wit: that the Creditor was otherwise properly secured, there was a material default under the Plan in that no payments had been made since confirmation, the Debtors had no equity in the property, and there was a lack of adequate protection for the Creditor.

Briefs were submitted. The Court found the briefs posed a very interesting question concerning whether or not the intangibles taxes should have been paid at the time the security deeds were filed or at any later time and if so what was the effect of the failure to pay. However, the Court finds it unnecessary to reach those issues.

Section 1141 of the Bankruptcy Code provides in part that, with certain exceptions not relevant here, "the provisions of a confirmed plan bind the debtor ... and any creditor...." In this case, by way of its Disclosure Statements and Plans, the Debtors acknowledged that Creditor was properly secured, indicating only a possible dispute as to the amount of the debt. It was on that basis that the Debtors sought and received confirmation of their Plan. Ballots were solicited and the Creditor made its decision with regard to voting its ballot and with regard to whether or not it would object based upon the representations made in the Disclosure Statements and the Plans. In fact, the Creditor did not object to Confirmation of the Plan and it was thus confirmed. There is no reservation in the confirmed Plan or in the Order of Confirmation as to a later determination of the secured status of this Creditor. In fact, as late as March 12 of this year the Debtors represented to the Court that the land in question "is secured to the Bank of Webster, and some arrangements will have to be made to satisfy the debt." It was only after the Creditor moved for relief from the stay that the alleged defect in their secured status was raised by the Debtors for the first time, over four years after the case was filed and almost three and a half years after the Plan was confirmed.

It is the opinion of this Court that Section 1141 of the Bankruptcy Code means what it says and not only are the Creditors bound by the confirmed Plan, but the Debtors are also so bound. To allow Debtors to solicit and obtain confirmation of a Plan representing that a creditor is properly and fully secured thereby avoiding a rejection of the Plan and an objection to the Plan and then to allow them to avoid the obligations undertaken in the Plan to that creditor would be unconscionable. This Court is a court of equity and will not condone such action.

The Supreme Court of the United States has held that an adjudication under the reorganization provisions of the Bankruptcy Act confirming a Plan of Reorganization of a corporation is *res judicata* in a State Court if it constituted an effective judgment in the Bankruptcy Court. They held in the case in question that the order upon a petition to vacate an order of confirmation settled the contest over jurisdiction of the Bankruptcy Court. Even if upon appeal from that order it might have been determined that the Court did not have jurisdiction, the determination of jurisdiction by the confirmation unappealed from was *res judicata* on the issue of liability of a guarantor even if the Bankruptcy Court had lacked subject matter jurisdiction. *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), *rehearing denied,* 305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. 437. The Order of Confirmation in this case under the Bankruptcy Code was likewise not appealed from and pursuant to Section 1141 of the Bankruptcy Code is likewise binding upon the Debtors and the Creditors.

The closest case in point appears to be *In re Garsal Realty, Inc.,* 39 B.R. 991 (N.D.N.Y.1984). In the *Garsal* case, after confirmation of a Plan filed under Chapter 11 of the Bankruptcy Code, the Debtor filed a motion seeking a continuation of the automatic stay, an extension of time to exercise an option to purchase an interest in property, and judgment in its favor on the issue of fees for the receiver and attorneys. The reorganization plan had provided for payment in full of the creditor's claim, had granted a six month option to purchase the creditor's mortgage at an agreed upon price to a third party and had provided that the receiver and certain attorney's fees

would be paid from receivership funds. The debtor was the chief proponent of the plan. Thereafter it allowed the option to purchase the mortgage to expire. The debtor then brought the motions previously mentioned, seeking to reinstitute the stay as to the property in question even though that stay had been vacated by stipulation between the parties prior to confirmation of the Plan. The Bankruptcy Judge denied all of the motions and the debtor appealed to the District Court.

District Judge McCurn affirmed on all counts, citing Section 1141(a) of the Bankruptcy Code and *Stoll v. Gottlieb, supra.*

"Since the Plan was confirmed the debtor has derived substantial benefits from it. . . . Garsal had ample opportunity to challenge any portion of the Plan during the confirmation hearings, yet it took no action whatsoever until some 10 months after the Plan was confirmed. It is clear from the transcript of the final confirmation hearing that Garsal was the chief proponent of the Plan and argued strenuously that it should be confirmed. If Garsal believed that the attorneys' fees included as part of the "non-interest portion" of the "B" Principal were unreasonable it could have and should have challenged those fees before Judge Marketos at the confirmation hearings. *Having failed to do so, and having derived benefits from the Plan, Garsal is equitably estopped from now denying the validity of the Plan." Ibid* at 994. (Emphasis added.)

Clearly the Debtors in this case were the chief proponents of their Plan. They benefited from it by way of the sale of some of the property and by way of having continued in possession and use of the property since the time of confirmation until now. They received a discharge in the order of confirmation. They are equitably estopped from now contending that they are not bound by the Plan as confirmed. That Plan clearly recognized the Creditor as secured on the property in question. The Creditor's right to relief from the stay otherwise having been stipulated, the Creditor is entitled to said relief. The Court expresses no opinion as to whether or not the Creditor must now pay the intangibles tax in order to have a valid foreclosure sale. A judgment will be entered in accordance herewith.

## JUDGMENT

In accordance with the Memorandum Opinion issued on today's date, the motion of Citizens Bank of Americus for relief from the stay as to the Debtor's real estate in Webster County, Georgia, described in deeds to secure debt between the Debtors and Bank of Webster dated May 29, 1974 and February 6, 1980, is granted.