**In the Matter of John A. DOOLEY, Debtor.**

**Bankruptcy No. 3–85–00828.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 7, 1990.

Jerome M. Strozdas, Springfield, Ohio, for debtor.

DECISION ON ORDER ON DEFEN-
DANT'S DOCUMENT TITLED, MO-
TION + CONTRA: PERMISSION TO
FILE; SUMMARY JUDGMENT; DIS-
MISSAL OF ACTIONS; TO OVER-
RULE MOTIONS; COSTS

THOMAS F. WALDRON, Bankruptcy Judge.

On November 6, 1989, the debtor filed a document titled, Motions + Contras: Permission To File; Summary Judgment; Dismissal Of Actions To Overrule Motions;

Costs (Doc. 359) (hereafter, debtor's filing). Although the debtor has repeatedly referred to this filing (Doc. 359) as a "motion for summary judgment", the description is inexact in that this filing (Doc. 359) not only contains the debtor's defenses to various motions and requests of M & M, but also contains the debtor's affirmative requests for various forms of relief. Additionally, not all of the issues presented in the debtor's filing (Doc. 359) are appropriate for disposition pursuant to the summary judgment rule (Bankr.R. 7056).

In determining the debtor's filing (Doc. 359), the court will separate the issues presented into the following categories:

I. —Those Issues Which Are Not Before The Court

II. —Those Issues Appropriate For Summary Judgment

III. —Those Issues Which Require An Evidentiary Hearing

## I. ISSUES WHICH ARE NOT BEFORE THE COURT

A number of the issues presented by the debtor are no longer pending before the court. The debtor's filing (Doc. 359) refers to the issues of recusal and vacatur. On November 14, 1989, the Honorable William A. Clark signed an Order Of Recusal (Doc. 361). Following a hearing held March 2, 1990, the undersigned Judge denied the debtor's request for vacatur (Orders Denying Debtor's Motion To Suspend Process In Case and Debtor's Motion For Reconsideration And Other Matters—Doc. 394, Doc. 395).

Additionally, the debtor's filing (Doc. 359) presents responses to Merchants & Mechanics Federal Savings and Loan Association's (M & M) "Motion In Limine" and "Motion To Vacate Order Entered October 25, 1989" (Doc. 356). With regard to the Motion In Limine, upon review of this case and the related adversary proceedings, the court finds there is no Motion In Limine filed by M & M. At the time of the pretrial conference held May 23, 1990, counsel for M & M represented that the Motion In Limine was not filed in this court. (The court's recollection is that counsel for M &

M represented that a Motion In Limine had been filed in the United States District Court.) To the extent that the debtor's filing (Doc. 359) is intended to respond to M & M's Motion In Limine, again, there is no Motion In Limine pending before this court.

Additionally, although M & M did file a Motion To Vacate Order Entered October 25, 1989 (Doc. 357), it also filed a Withdrawal Of Motion To Vacate (Doc. 401). Accordingly, there is no pending motion by M & M to vacate the Order entered October 25, 1989.

The debtor also "seeks sanctions against M & M in the amount of two hundred dollars to partially defray the cost of defending against the frivolous motions of limine and vacate/order." As the court has pointed out no motion for limine was filed in this court. Accordingly, no response from the debtor was required in this court, nor would there be a basis for any sanction in connection with this issue.

The issue of sanctions in connection with the debtor's defense against the Motion To Vacate Order is discussed in the next section concerning summary judgment.

## II. SUMMARY JUDGMENT ISSUES

The debtor has frequently asserted (Doc. 409, p. 5, Doc. 418, pp. 10–11) that summary judgment should be rendered in connection with his filing (Doc. 359).

The debtor's filing (Doc. 359) states:

The time condition is satisfied by the instant pleading. The affidavit condition is satisfied by the debtor's use of the unsworn declaration for the entirety of this pleading including exhibits and references (p. 6).

In this document, Debtor has addressed evidence necessary to a grant of summary judgment (p. 19).

Debtor has conducted discovery (p. 20).

Pursuant to Rule 7056, Debtor moves the court to enter judgment in his favor in the above styled action, on the grounds that there is no genuine issue as to any material fact and that Debtor is entitled to judgment as a matter of law

in respect of Debtor's Confirmed Plan (p. 21).

The issues appropriate for summary judgment in connection with the debtor's filing (Doc. 359) may be generally classified as issues related to preconfirmation payments by the debtor to M & M, issues related to postconfirmation payments by the debtor to M & M and issues related to the debtor's assertion that he is entitled to judgment to "partially defray the cost of defending against M & M's frivolous Motion To Vacate Order."

### A. Principles Applicable To Summary Judgment Rulings

This court has previously noted:

As the Advisory Committee note to the 1963 Amendment of Fed.R.Civ.P. 56(e) states—"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." 28 U.S.C.A.Fed.R.Civ.P., Rule 56–59 at 18 (1982).

*Matter of Warner,* 65 B.R. 512, 517 (Bankr.S.D.Ohio 1986).

*In Matter of Warner,* this court had occasion to discuss the import of the United States Supreme Court's rulings in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This court noted:

These cases provide counsel with clear warning that the presentation or defense of a Motion For Summary Judgment requires, at a minimum, an adequate opportunity (whether exercised or not), for the parties to conduct full discovery of the issue, coupled with an understanding of the substantive evidentiary burden involved in the specific issue and a proper presentation of the material and genuine factual matters which would result in the resolution of the issue or the requirement of a trial. *Warner* at 518.

More recently, the Sixth Circuit commented on the Supreme Court's trilogy of summary judgment decisions and stated:

Scholars and courts are in agreement that a "new era" in summary judgments dawned by virtue of the Court's opinions in these cases. This court has recognized the dramatic change brought about by these opinions, as have other courts.

On the whole, these decisions reflect a salutary return to the original purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact had tended to emasculate summary judgment as an effective procedural device (footnotes omitted).

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989).

It must be recalled that a motion for summary judgment is a filing of extremely grave and serious import. It represents a movant's demand that the court resolve the issues presented and contains the possibility that the resolution could be adverse to the movant. As this court has previously noted in *Matter of Sams*, 106 B.R. 485, 491 (Bankr.S.D.Ohio 1989),

Federal Courts have long recognized that if there is no genuine issue as to any material fact the court may enter summary judgment, *sua sponte*. There is no requirement that there be a cross-motion or other pending motion seeking such summary judgment. As the court noted in *Buckel v. Prentice*, 410 F.Supp. 1243, 1247 (S.D.Ohio 1976), *aff'd per curiam* 572 F.2d 141 (6th Cir.1978),

The Court, then, while in agreement with plaintiffs that there is no genuine issue as to any material fact herein, does not agree that plaintiffs are entitled to judgment as a matter of law. On the contrary, the Court concludes that on the facts present the defendants are entitled to judgment. The fact that defendants have not filed a cross-motion for summary judgment does not preclude entry of such a judgment if they are otherwise entitled thereto (citations omitted).

*Accord, In re O'Malley*, 90 B.R. 417, 422 (Bankr.D.Minn.1988); *In re Marvin Properties, Inc.*, 76 B.R. 150, 152 (9th Cir. BAP 1987). Additionally, the United States Supreme Court has recently reaffirmed this authority. The Supreme Court stated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence. *See [Catrett v. Johns–Manville Sales Corp.,]* 244 U.S. App.D.C. [160], at 167–168, 756 F.2d [181], at 189 [ (1985) ] (Bork, J., dissenting); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720, pp. 28–29 (1938).

The court has repeatedly offered the parties opportunities to come forward with all evidence and file memoranda and present oral arguments (Doc. 399, Doc. 415).

A determination pursuant to the summary judgment rule (Bankr.R. 7056) is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Federal Courts have recognized the "wide sweep" of evidence that can be considered in summary judgment determinations. *Advance Financial Corp. v. Isla Rica Sales, Inc.*, 747 F.2d 21, 27 (1st Cir. 1984). As the Tenth Circuit noted in *St. Louis Baptist Temple v. F.D.I.C.*, 605 F.2d 1169, 1171–72 (10th Cir.1979):

Significantly applicable in this case is the rule that a district court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial. *Chandler v. O'Bryan*, 311 F.Supp. 1121 (D.C.Okl.1969) reversed on other grounds, 445 F.2d 1045 (10th Cir.1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972); Wright & Miller, Federal Practice and Procedure: Civil § 2723; 6 Moore's Federal Practice, § 56–11[1–7]. Thus, a court may: consider stipulations, concessions of counsel,

transcripts, exhibits and other papers, 6 Moore's Federal Practice, § 56.11[1.–8]; take judicial notice, whether requested or not (Fed. Rules Evid. Rule 201, 28 U.S. C.A.) of it own records and files, and facts which are part of its public records. 29 Am.Jur.2d, Evidence, § 85. Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Chandler v. O'Bryan, supra; Randy's Studebaker Sales, Inc. v. Nissan Motor Corporation,* 533 F.2d 510 (10th Cir. 1976); *Duhart v. Carlson,* 469 F.2d 471 (10th Cir.1972), *cert. denied,* 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973); *Insurance Company of North America v. National Steel Service Center, Inc.,* 391 F.Supp. 512 (N.D.W.Va.1975), *affirmed,* 529 F.2d 515 (4th Cir.1976); 9 Wigmore Evidence, Section 2579 (3rd Ed.); Hunter, Federal Trial Handbook, § 5010 (1974).

As the First Circuit recently noted in *U.S. v. O'Connell* 890 F.2d 563, 567 (1st Cir.1989),

> This circuit has held that because depositions and answers to interrogatories may be considered on a motion for summary judgment,

> > there is no sensible rationale which would preclude reliance on sworn testimony faithfully recorded during the conduct of a judicially-supervised adversarial proceeding. All of the hallmarks of reliability attend upon such trial transcripts. *See, e.g., Fisher v. Shamburg,* 624 F.2d 156, 162 n. 7 (10th Cir.1980) (though summary judgment was improper on other grounds, trial court properly considered the transcript of the defendant's earlier criminal trial); *Askew v. Bloemaker,* 548 F.2d 673, 679 (7th Cir.1976) (district court may properly consider a certified transcript on a motion for summary judgment); *Langston v. Johnson,* 478 F.2d 915, 917 n. 17 (D.C.Cir.1973) (collecting cases).

With these general principals governing determinations pursuant to the summary judgment rule, the court turns to the specific issues presented for determination as part of the debtor's filing (Doc. 359).

**B. Debtor's Request For Sanctions**

An issue which is subject to determination under the summary judgment rule is the debtor's request for "sanctions against M & M in the amount of two hundred dollars ($200.00) to partially defray the cost of defending against the frivolous motion ... to vacate order." While the debtor does not cite any authority for his request, a basis for sanctions could exist if M & M failed to comply with a court order or was guilty of a violation of Bankr.R. 9011. There is no court order prohibiting M & M from filing the Motion seeking to vacate a prior order of the court; however, the use of the word "frivolous" in the debtor's request raises issues in connection with Bankr.R. 9011.

Requests for sanctions pursuant to Bankr.R. 9011 have been the subject of numerous decisions; and this court has considered this issue in two decisions: *Matter of Wright,* 68 B.R. 660 (Bankr.S.D.Ohio 1986) and *Matter of Beam,* 73 B.R. 434 (Bankr.S.D.Ohio 1987). Although caselaw has continued to develop during the years following these decisions, this court remains convinced that

> [t]he court is not required to deeply examine the persuasive effect of the arguments advanced to determine which party prevails; but rather, it is called upon to merely note whether a potentially persuasive argument within the ambit of ... Rule 9011(a) has been advanced in support of the proponent's position. *Beam* at 438.

M & M's Motion To Vacate Order Entered October 25, 1989 (Doc. 357) begins by noting that the court's Order entered October 25, 1989 was based on correspondence which was not served upon counsel for M & M. The court's Order entered on October 25, 1989 (Doc. 356) reads in part,

> It is ordered that copies of Debtor's correspondence dated October 3, October 11 and October 23, 1989 be served upon counsel for the parties in the contested matter set for trial November 17, 1989.

The issue of filings by this debtor that do not contain certificates of service has previously been the subject of a ruling by this court. (Order On Decision Setting Hearings On Pending Motions, Granting Motions, Striking Filings And Ordering Other Matters (Doc. 379)). Without repeating the contents of the court's prior decision (Doc. 378), it remains this court's firm belief that notice and proof of service in connection with the filing of documents that affect the procedural or equitable rights of other parties is not an insignificant or technical component in a bankruptcy proceeding and failure to comply with these requirements and the specific rules governing notice and certificates of service in bankruptcy proceedings would provide an adequate basis to request that the court vacate an order, whether or not the request would ultimately be granted.

Accordingly, to the extent that the debtor's filing (Doc. 359) requests that summary judgment be granted in his favor with regard to the issue of sanctions in the amount of two hundred dollars ($200.00) against M & M in connection with the "frivolous" motions, the debtor's request is DENIED.

### C. Preconfirmation Payments

■ The debtor asserts that prior to the confirmation of his amended plan, he made various payments to M & M, which M & M failed to properly credit to the debtor's obligations in connection with loans involving the Cassano restaurant and the Wendy restaurant. The debtor's filing (Doc. 359) sets forth a series of mathematical computations using various interest factors to illustrate "the unresponsible accounting of M & M" and concludes that M & M's application of the debtor's preconfirmation payments are "clearly error on the part of M & M" (Doc. 359).

The "exhibits, documents and references" to which the debtor directs this court's attention reflect that the amended plan confirmed by the court in this case was a plan proposed by the debtor and not any other party in interest (11 U.S.C. § 1121). The confirmation hearing extended over two hearing dates; however, at the conclusion of the hearing, the Amended Plan Of Reorganization filed by the debtor on March 5, 1987 was confirmed (Doc. 224). M & M was the primary creditor who continued to object to the confirmation of the debtor's plan; nevertheless, over the objection of M & M, the court approved the classification of M & M, recognized M & M's election under § 1111(b)(2) and confirmed the debtor's plan. The debtor's confirmed plan provides that "Cassano's 7.5% Bond to be paid in full" and "Wendy's 8% Bond to be paid in full" (See Exhibits E and F attached to the debtor's filing, Doc. 218, Doc. 222 and Doc. 224) [1].

The lengthy and often vigorously contested process leading to the confirmation of a debtor's proposed Chapter 11 Plan would become meaningless if the order confirming a debtor's plan was not accorded

---

1. The debtor's specific separate classification of M & M's claims, which was orally amended at the time of the final confirmation hearing on June 1, 1987 provides, as part of the confirmed plan;

"Class B–4: Cassano's 7.5% Bond to be paid in full. Payments will be made as provided by said bond on the first day of each month and on the same date of each month thereafter, said payments to be applied as provided in Industrial Development First Mortgage Revenue Bond executed by the Board of Commissioners of Greene County, Ohio on September 29, 1978. All monthly payments shall be in equal installments of $1,758.00. All unpaid principal and accrued interest, if not sooner paid, shall be paid in 360 months following confirmation of this plan. Upon full payment, the first mortgage lien shall be released.

Wendy's 8% Bond to be paid in full. Payments will be made as provided in said Bond on the first day of each month and on the same date of each month thereafter, said payments to be applied as provided in Industrial Development First Mortgage Bond executed by the Board of Commissioners of Williams County, Ohio on May 21, 1979. The monthly payment following confirmation of this plan beginning on the first day of each month or on the same date of each month thereafter, all monthly payments shall be in equal installments of $2,382.00. All unpaid principal and accrued interest, if not sooner paid, shall be paid in 360 months following confirmation of this plan. Upon full payment, the first mortgage lien shall be released."

preclusive effect. For that reason, among others, a specific provision was enacted in Chapter 11 to statutorily strengthen the preclusive effect granted to a Chapter 11 confirmation order. The provision, in relevant part, states,

> the provisions of a confirmed plan bind the debtor ... and any creditor ... of ... the debtor, whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan. 11 U.S.C. § 1141(a).

It is impossible to ignore the inclusion of the words "The provisions of a confirmed plan bind the *debtor"* in applying this section. One Bankruptcy Court noted, "It is the opinion of this court that § 1141 of the Bankruptcy Code means what it says and not only are the creditors bound by the confirmed plan, but the debtors are also so bound." *In re Kennedy,* 79 B.R. 950, 952 (Bankr.M.D.Ga.1986) *See also In re Garsal Realty Co., Inc.,* 39 B.R. 991, 994 (N.D.N.Y.1984)

M & M filed its election under § 1111(b)(2) on April 11, 1986 (Doc. 77). Further, the allowance and amount of M & M's claim was a matter of specific review and determination in connection with the hearings leading to confirmation of the debtor's amended plan. At the time of the confirmation hearing the debtor orally amended his plan to eliminate a proposed alternative treatment for M & M's claim and instead recognized that M & M was entitled to full payment of its allowed claim. The transcript of the confirmation hearing held May 21, 1987 (Doc. 210, pp. 50–52) reads in part:

> MR. PETTIGREW [counsel for the debtor]: On May 20, 1985, The Clerk of this Court docketed the claim of M & M—actually there are two claims. It's our understanding that those are prima facie evidence of the claims of this entity and the plan provides that those claims will be paid as allowed by the Court. At this point there has been no challenge to it, so we ask that the Court take judicial notice on the claims docket; they are docketed as claim No. 6 and claim No. 7.

> Claim No. 6 of M & M Federal, $320,104.92 plus interest at 8 percent per annum and the remarks indicate a mortgage loan.

> Claim No. 7, $253,756.80, plus interest at 7.5 per cent per annum and the remarks indicate mortgage loan.

> It is our contention that as a result of the records of this court, the filings by M & M, that the claim at this point is allowed by virtue of those proofs of claims.

> Second Mr. Strozdas has referred to an 1111(b) election. It is our contention that the 1111(b) if made still is dependant—let me read the language; 1111(b)(2) indicates that such an election is made then notwithstanding Section 506(a) of this title, such claim is a secure claim to the extent that such a claim is allowed.

> At this point, as a matter of fact, and as a matter of law, the claims are as docketed in the records of this court and therefore we request the Court to take judicial notice of the claims register and proofs of claim to establish for purposes of today's hearing the allowed secured claim of M & M Federal.

> THE COURT: Well, we'll take judicial notice of the record in the court and the filings as suggested. Is there some other—I don't really understand where the dispute is then Mr. Stozdas as to M & M's claim. It was that amount plus interest from the date stated in each proof of claim, is it not?

> MR. STROZDAS: Yes, your Honor.

The transcript (Doc. 210, pp. 118–121) continues:

> Q. [Mr. Strozdas, counsel for M & M] At my request did you bring with you today a tabulation of the amounts due on the Dooley loans at Wendy's—secured by Wendy's and Cassano's?

> A. [Mr. McCuddy, Loan Service Manager for M & M] Yes, I did.

> Q. Okay.

> MR. DOOLEY: What's the name of the witness, please?

> THE WITNESS: James McCuddy.

> (Paperwriting marked M & M Exhibit B for identification.)

Q. Jim, I'm going to hand you what's been marked for identification as M & M's Exhibit B and ask you if that is a tabulation of the amounts due on the two Dooley loans as of today?

A. Yes, it is.

Q. And was that loan inquiry statement taken from records under your supervision and control?

A. Yes, it was.

Q. As to the larger of the two loan amounts, which is secured by the Wendy's property, would you state what the M & M's records show is the balance due on that loan as of today?

A. When you say balance you mean principal balance or the payoff?

Q. The full payoff balance including all principal and interest and other charges.

A. $324,430.09.

. . . . .

Q. On the Wendy's loan or excuse me, on the Cassano's loan what do your records show the payoff amount to be as of today?

A. We show the payoff is $251,267.53.

[Cross-examination questions by Mr. Pettigrew, counsel for the debtor]

Q. And is the arrearage amount included in the $324,430 amount? Is that the total and of that $22,927 is in arrears?

A. Okay, you're saying is that included in this figure?

Q. Yes.

A. Yes, it is.

Q. So it's of that amount, the same thing, $251,267, you're saying of that $18,572.99 is in arrears?

A. Yes.

. . . . .

Q. On the Wendy's obligation what is the interest factor?

A. 8 percent.

Q. And on the Cassano's, what is the interest factor?

A. 7½ percent.

At the continued confirmation hearing the transcript (Doc. 269, p. 85) reads, in part:

. . . . .

MR. STROZDAS: Exhibit B. Your Honor, is the loan balance information, which was presented by James McCutty as a business record of the M & M.

MR. PETTIGREW: We stipulated to that at a prior session of this hearing. Your Honor.

THE COURT: That's admitted.

A consideration of the "documents, exhibits and references" urged by the debtor in connection with his filing (Doc. 369) leads to the inescapable conclusion that the debtor's liability to M & M with regard to the Cassano and Wendy obligations not only could have been, but actually was, the specific subject of inquiry and uncontradicted evidence and was determined at the time of the confirmation hearing. The debtor, rather than choosing to contest the amount of the allowed claim of M & M actually urged its acceptance as part of the confirmation process. *St. Louis Baptist Temple* at 1172; *Hancock Industries v. Schaeffer*, 811 F.2d 225, 230 (3rd Cir.1987); *O'Connell* at 567. The judicial concepts of claim and issue preclusion (*See Matter of Wintrow*, 57 B.R. 695, 698–99 (Bankr.S.D. Ohio 1986)) and the specific statutory provisions of § 1141 establish the allowed amount of M & M's claims concerning the Wendy restaurant and the Cassano restaurant obligations as of the date of the confirmation hearing and the debtor is bound by those determined amounts. The confirmation order prevents the debtor from relitigating the amount or application of his preconfirmation payments to M & M to alter the determined amounts in the confirmed plan. *In re Justice Oaks, II, Ltd.*, 898 F.2d 1544, 1522 (11th Cir.1990); *In re Kentucky Lumber Co.*, 860 F.2d 674, 678–79 (6th Cir.1988).

■ Further, to the extent that the debtor's filing alleges that the confirmation order was obtained as a result of fraud, it is clear that the order of confirmation (Doc. 224) was entered on June 22, 1987 and the debtor's filing (Doc. 359) occurred on November 7, 1989. Thus, the debtor's filing occurred almost two and one-half years after confirmation of the plan and well beyond the 180 day limit imposed by 11

U.S.C. § 1144.[2] *In re Longardner & Associates, Inc.*, 855 F.2d 455, 460–62 (7th Cir. 1988).

Accordingly, to the extent that the debtor's filing (Doc. 359) requests relief concerning M & M's application of the debtor's preconfirmation payments, the debtor's request is DENIED and it is determined that the confirmed plan provides that the obligation due M & M from the debtor in connection with the Wendy restaurant is three hundred and twenty-four thousand, four hundred thirty dollars and nine cents ($324,430.09) and the obligation due M & M from the debtor in connection with the Cassano restaurant is two hundred fifty-one thousand, two hundred sixty-seven dollars and fifty-three cents ($251,267.53) as of June 22, 1987, the date the court entered the Order confirming the debtor's Chapter 11 Plan (Doc. 224).

D. Post Confirmation Payments

■ The issue of the debtor's post confirmation payments is a more complicated issue which is not capable of full resolution pursuant to the summary judgment rule; however, a partial resolution of this issue is appropriate. The debtor's filing (Doc. 359 —pp. 10–11) states, in part,

At the time of the finalization of the Plan terms, Debtor accepted in good faith the two loan balances which had been offered by M & M during the Confirmation hearings. The confirmed terms ratified the original bond terms with a modification in the maturity to 30 years from the restart of payments to M & M.

Exhibit F displays the special terms for Class B–4 with M & M as the sole occupant. It is to be noted that the date for the first such payment is not set forth. With the "Effective Date" clause in the Plan, it was supposed by Debtor that after the ten day appeal period had expired, distributions to M & M would be undertaken; *DEBTOR'S * * PLAN * *,* Filed 6–22–87, Pg. 2, Cl. 9:

The debtor's March 5, 1987 Plan Of Reorganization Incorporating Amendments And Modifications Through June 1, 1987 (Doc. 222) provides in part,

John A. Dooley, debtor and debtor in possession herein, submits the following Plan of Reorganization:

## ARTICLE I

### DEFINITIONS

For the purposes of this Plan of Reorganization, the following definitions shall apply unless the context otherwise requires:

1. "Claim" shall mean a duly listed or timely filed claim which is allowed and ordered paid by the Court.

.    .    .    .    .

.    .    .    .    .

4. "Confirmation" shall mean the entry by the Court of a final order confirming the Plan of Reorganization of the Debtor under Chapter 11.

.    .    .    .    .

.    .    .    .    .

.    .    .    .    .

9. "Effective Date" shall be that date on which the Order Confirming the Plan becomes final and nonappealable.

The court recognizes that on July 2, 1987, M & M appealed the Order confirming the debtor's plan (Doc. 226). M & M's appeal has not yet been the subject of a decision from the District Court.

In further provisions of the confirmed plan, specifically Article IV—*Treatment Of Classes Under The Plan*—the debtor provides that, "Class A–1 will be paid ... on the *effective date* or within ten days of allowance of such claim; and, in Class B–5, ... such payments to begin on the *effective date* or within ten days of allowance of

---

**2.** 11 U.S.C. § 1144. Revocation of an order of confirmation. On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—

(1) contain such provision as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor.

such claim; and, in Class C–1, payments will occur . . . on or before the eleventh anniversary of the *effective date"*. (emphasis added). Payments to these classes are clearly subject to the "effective date" provision.

As the result of the debtor's specific inclusion in the confirmed plan of language specifying that payments were to begin on the "effective date" in connection with the above classes of claims, it is significant to note that the debtor did not include the specifically defined term "effective date" in connection of the payment of other claims:

*Class B–1* Central Trust Company—"payments in accordance with the settlement agreement between the Central Trust Company, N.A. and the debtor",

*Class B–2* Gem Savings Association—"in accordance with the terms of the mortgage from the debtor to it, at which time it shall release its lien.",

*Class B–3* Freedom Federal Savings & Loan Association—"beginning on the first day of the month following entry of a final, nonappealable order allowing such claim."

Among the creditors whose payments do not begin on the defined "effective date" is Class B–4—Merchants & Mechanics Federal Savings and Loan Association. The confirmed plan provides these payments to M & M "will be made as provided by said bond on the first day of each month and on the same date of each month thereafter. . . . All unpaid principle and accrued interest, if not sooner paid, shall be paid in 360 months following confirmation of this plan".

The defined term "effective date" is conspicuously absent from the payment provisions concerning M & M. Accordingly, by the terms of the debtor's own plan, including the definitions chosen by the debtor and the payment dates chosen by the debtor, the debtor is required to make payments on the allowed amount of M & M's claim as provided by the respective bonds on the first day of each month and on the same date of each month thereafter. Further, unless sooner paid, these claims must be paid within 360 months of June 22, 1987,

the date of the Order Confirming The Debtor's Amended Plan (Doc. 224).

Accordingly, to the extent that the debtor's filing (Doc. 359) request that he be granted summary judgment on this issue, the request is DENIED and it is determined that the terms of the confirmed plan require the debtor to commence payment in connection with the obligations due on the Wendy restaurant and the Cassano restaurant on the first day of each month and on the same date of each month following June 22, 1987 and to complete full payment within 360 months of June 22, 1987, the date of the confirmation of the debtor's amended Plan (Doc. 224).

## III. ISSUES WHICH REQUIRE AN EVIDENTIARY HEARING

The reason that the issue of post confirmation payments cannot be fully determined pursuant to the summary judgment rule is that there is no evidence presently before the court as to the amount of payments made by the debtor pursuant to the terms of the confirmed plan and, if the debtor is in default under the terms of the confirmed plan or a court order (Doc. 339), whether such default constitutes a basis for the conversion or the dismissal of this case (11 U.S.C. § 1112). The resolution of this issue must await the presentation of evidence by M & M and any defense by the debtor. *Matter of Warner,* 517–18.

Accordingly, to the extent that the debtor's filing (Doc. 359) asserts that M & M's request to have the debtor's case be dismissed can be determined in the debtor's favor pursuant to the summary judgment rule, the debtor's request is DENIED. The court, by separate order, has scheduled a hearing on this issue and other issues remaining in dispute between the debtor and M & M.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.