In re Anthony ZEOLI a/k/a Anthony J. Zeoli, Jr. and Nancy Zeoli a/k/a Nancy T. Zeoli a/k/a Nancy Dinoia, Debtors.

**Bankruptcy No. 00 B 11172(ASH).**

United States Bankruptcy Court,
S.D. New York.

June 1, 2000.

Konove and Konove, P.C. (by Ronald L. Konove), White Plains, NY, for Movant.

Law Office of Shmuel Klein, PC (by Shmuel Klein), Spring Valley, NY, for Debtors.

### MEMORANDUM DECISION GRANTING RELIEF FROM STAY

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

At issue in this contested matter is the interplay between a secured creditor's right under 11 U.S.C. § 362(d) to relief from the automatic stay and a debtor's rights under the so-called "cram-down" power under 11 U.S.C. §§ 1322(b)(2), 1325(a)(5)(B) and 506(a).[1]

The facts are simple and, except as to value, undisputed. In early 1996 the debtors leased a new Jeep Grand Cherokee vehicle (the "vehicle"). The three-year lease expired in early 1999, but the debtors retained possession of and continued to use the vehicle, apparently continuing to pay the same monthly lease payment. The lease provided for a limitation of 30,000 miles for the three-year lease term with substantial additional charges for excess mileage. On September 1, 1999 the debtors purchased the vehicle. At the time of the purchase the vehicle had been driven approximately 72,000 miles. The debtors borrowed the full purchase price from movant, First Union National Bank (the "Bank"), and executed a promissory note payable to the Bank in the amount of $15,298.47 together with a security agreement granting the Bank a first lien on the vehicle. The Bank holds the certificate of title to the vehicle, which has never been titled in the debtors' names. The promissory note called for monthly payments on the first of every month. The debtors defaulted on the payment due December 1, 1999 and have paid nothing to the Bank since. The debtors presently owe a balance of $14,671.59 plus arrears for a total of $16,315.69. The Bank asserts that the "book value" of the vehicle is approximately $14,225, although book value is probably based on far lower mileage and better condition than the vehicle.

On February 27 the vehicle was repossessed by the Bank and delivered to a location in Pennsylvania to be auctioned. On March 23, 2000 the debtors filed for protection under Chapter 13 of the Bankruptcy Code. At some time and for some reason not explained in the record, the Bank permitted the vehicle to be reclaimed by the debtors, who are currently in possession.

By notice of presentment returnable May 17, 2000 the Bank moved for relief from the automatic stay under Section 362(d) of the Bankruptcy Code, alleging that the debtors have no equity in the vehicle, that the vehicle is not necessary for an effective reorganization and that the Bank lacks adequate protection because the vehicle is depreciating.

In his affirmation in opposition to the Bank's motion, debtor Anthony Zeoli asserts that "... the actual value of this SPECIFIC vehicle is $6,500.00.... The vehicle needs a transmission (as a result of the vehicle being improperly towed by First Union's agent), it has body damage to the rear of the vehicle and rust and the front seat does not work." At a hearing on May 19 Mr. Zeoli testified further concerning the deteriorated and decrepit condition of the vehicle, which he drives on average 72 miles a day and which now has traveled over 97,000 miles. He asserted that the vehicle's transmission was damaged by the tow truck operator who repossessed the vehicle on behalf of the Bank on

---

1. The Bankruptcy Court has core jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and 157(a) and (b)(2).

February 27 and produced a hearsay and inadmissible document purporting to estimate the cost to repair the transmission at $2,200. Mr. Zeoli also produced an inadmissible document from an alleged automobile dealer purportedly representing the trade-in value[2] of the vehicle to be $6,500.

In their memorandum in opposition to the motion, the debtors rely on Section 1322(b)(2) of the Bankruptcy Code which provides that a Chapter 13 plan may "modify the rights of holders of secured claims...." As part of the plan confirmation process, the debtors contemplate that the Court would conduct a hearing under Section 506 of the Bankruptcy Code to determine the secured and unsecured portions of the Bank's claim, with the secured portion (allegedly $6,500) to be paid outside the plan in monthly installments over three years and the balance to be paid along with other unsecured debts as part of their plan at a small fraction of face value. *See* 11 U.S.C. § 1325(a)(5)(B).

The matter of "cram down" in the context of Chapter 13 has given rise to troubling issues for courts and commentators. Moreover, the proposed cram down in the context of this specific case may raise factual questions as to whether the debtors' plan "has been proposed in good faith and not by any means forbidden by law" under Section 1325(a)(3). But the Court need not reach any of these confirmation issues, because the Bank is entitled to an order granting relief from stay.

Section 362(d)(1) and (2) provide as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if -

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization; or

(3) . . .

Two threshold points should be made concerning these provisions. First, Section 362(d) is mandatory, not permissive. Congress has provided that "the Court *shall* grant relief from the stay" (emphasis supplied) for any of the reasons stated in the three subsections. *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr.S.D.N.Y.1994); *In re Touloumis*, 170 B.R. 825, 827 (Bankr.S.D.N.Y.1994); *In re de Kleinman*, 156 B.R. 131, 136 (Bankr.S.D.N.Y.1993); *In re Diplomat Electronics Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y.1988). Second, the grounds for relief from stay are presented in subsections (1), (2) and (3) in the disjunctive; thus, if any one subsection applies, the Court must grant a motion for relief from stay. In this case, both subsections (1) and (2) are applicable, and each requires that the stay be lifted.

Subsection (1) requires relief "for cause." In this case, the "cause" is twofold. First, the debtors breached their obligations under their promissory note and have paid nothing to the Bank since November 1, 1999, either pre- or postpetition. *See, In re Kornhauser,* 184 B.R. 425, 428 (Bankr.S.D.N.Y.1995); *In re Kennedy,* 79 B.R. 950, 952 (Bankr.M.D.Ga. 1987); *In re R & H Investment Co., Inc.,* 46 B.R. 114, 118 (Bankr.D.Conn.1985). Of course, where the value of the collateral substantially exceeds the secured creditor's claim, a debtor's breach of his financial obligation alone may not constitute "cause" because the equity cushion in the collateral may provide the secured creditor with adequate protection. *See, In re El-*

---

**2.** *Cf., Associates Commercial Corporation v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) (cram down value of collateral is the price a willing buyer in debtor's situation would pay to obtain like property from a willing seller).

*mira Litho, Inc., supra* 174 B.R. at 904 (ruling, "[a]n equity cushion, therefore, provides adequate protection if it is sufficiently large to ensure that the secured creditor will be able to recover its entire debt from the security at the completion of the case.") Such is not the case here, however, and that leads us to the second element of "cause" in this case, namely, the "lack of adequate protection" specifically identified as "cause" in subsection (1). Whether the vehicle is worth $14,225 book value or $6,500 or (more likely) something in between makes no difference. There can be no doubt that (1) the Bank is undersecured and (2) the vehicle, like almost all used cars, is a wasting asset.

These facts— collateral worth less than the debt which it secures, continuing erosion in the value of the collateral and debtors without the assets, income or inclination to provide "adequate protection"— present an archetype of "cause" for relief from stay under Section 362(d)(1). *See, In re Elmira Litho, Inc., supra,* 174 B.R. at 904 (ruling that in the "absence of an equity cushion...if the collateral is also declining in value, it is more likely than not that the secured creditor is being injured by the continuation of the stay.") It is true that the Bank is entitled to "adequate protection" only for the value of the collateral. But the debtors have not made *any* payment to the Bank since November 1999 and apparently do not intend to do so unless and until their cram down plan is confirmed, thereby placing the entire risk of loss on the Bank. The debtor's failure to tender any adequate protection conflicts with the statute, Section 362(d)(1), and is particularly unacceptable where the debtor controls and continues to use and depreciate the collateral, and has the right to abandon his obligations as a Chapter 13 debtor at will before or after confirmation.

■ The requirements of Section 362(d)(2) also appear to be met in this case. The debtors do not have equity in the vehicle under subsection (A), and they have not contested the Bank's assertion that the vehicle "is not necessary to an effective reorganization" within the meaning of subsection (B) either in their papers in opposition or at the hearing on May 19.

The sole topic addressed in the debtors' papers and by their counsel at the hearing on May 19 was the question whether the debtors would be entitled at confirmation to cram down the Bank's secured claim under 11 U.S.C. §§ 506, 1322(b)(2) and 1325(a)(5)(B). That issue is mooted by the threshold determination of the Bank's motion to lift the stay which is before this Court, and which must be granted under the mandatory provisions of Section 362(d)(1) and (2) of the Bankruptcy Code.

■ Whether by accident or design of Congress, creditors holding claims secured by property other than the debtor's principal residence do not enjoy the same protections in Chapter 13 as in Chapter 11.[3] But they do have the same rights under Section 362(d). Assuming in this case, without deciding, that the debtors would be entitled to confirm a plan which would cram down the Bank's car loan, that putative entitlement does not override the Bank's right to relief from the stay. To the contrary, Section 362(d) may operate to render an otherwise confirmable plan unconfirmable by lifting the stay to allow a creditor to foreclose on property that is essential to the debtor's plan. The primacy of Section 362(d) over a debtor's prospective right to confirm a plan is manifest from the juxtaposition of subsection (2), which mandates stay relief where the "property is *not* necessary to an effective reorganization" (emphasis supplied), with subsections (1) and (3), which mandate stay relief while omitting the quoted language, with the necessary implication that subsections (1) and (3) apply even if the

---

**3.** For example, a Chapter 11 secured creditor can make the election under Section 1111(b), for which there is no analogue in Chapter 13. Moreover, a Chapter 11 debtor is obligated to perform by the confirmation order, whereas a Chapter 13 debtor has the right to dismiss or convert to Chapter 7 at will and thereby set the confirmation order to naught.

property *is* necessary for an effective reorganization. Not all Chapter 11 and Chapter 13 cases result in successful restructuring of debts, and foreclosure on a crucial piece of the debtor's property after a successful motion to lift the stay under Section 362(d)(1) is often the principal reason for failure.

In this case the Bank and the debtors extended credit and incurred a debt which was improvident for both because the amount of the loan probably exceeded the value of the vehicle from the outset. But bad judgment cannot be invoked as a sword or a shield by either the Bank or the debtors: their respective rights and obligations are as provided in the Bankruptcy Code and the contracting documents under the facts as they are presented to the Court. On the facts here, the Bank is entitled to an order vacating the automatic stay under Section 362(d)(1) so as to enable it to pursue its state law contractual remedy, whatever that remedy may be worth given the present value of the vehicle.

The Court will enter an appropriate order.