IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

BILLY GWIN MITCHELL,

Plaintiff/Counter-Defendant/Appellee,

V.

SAM F. COLE, JR., Substitute
Trustee, ESTATE OF PRUDENCE
REYNOLDS, and GERALD W.
PICKENS, Administrator CTA,

Defendants/Counter-Plaintiffs/Appellants.

Shelby Chancery No. 97623-2 R.D.
C.A. No. 02A01-9503-CH-00060

Hon. Russell Fowler, Special Chancellor

FILED

August 8, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

JAMES STEPHEN KING and ARTHUR E. QUINN, Bogatin, Lawson & Chiapella, Memphis, Attorneys for Plaintiff/Counter-Defendant/Appellee.

SAM F. COLE, JR., Memphis, Attorney for Defendants/Counter-Plaintiffs/ Appellants.

*REVERSED AND REMANDED*

Opinion filed:

TOMLIN, Sr. J.

The original plaintiff in this case, Billy Gwin Mitchell ("plaintiff" or "Mitchell") filed suit in the Chancery Court of Shelby County seeking to enjoin the foreclosure of a deed of trust. Named as defendants were Sam F. Cole, Jr., Substitute Trustee of the Estate of Prudence Reynolds, and Gerald W. Pickens, Administrator CTA ("defendants" or by name). Defendants filed an answer and a counter-complaint in which they contended, among other things, that the records of Mitchell's Chapter 11 bankruptcy case reflected Mitchell's confirmed amended plan of reorganization mandated that Mitchell pay the mortgage indebtedness to Ms. Reynolds in accordance with the terms of the promissory note. As counter-plaintiffs, Cole and Pickens sought a money judgment for the principal balance due and owing on the note, plus accrued interest and attorney's fees and costs. At the conclusion of all the proof, the case was submitted to a jury, and after issues of fact had been resolved, the special chancellor entered a judgment in favor of the Reynolds estate in the amount of $41,101.64 on the promissory note and attorney's

1

fees in the amount of $21,900.00.

Defendants filed a motion for a new trial alleging five errors. The special chancellor denied the motion for a new trial and entered a final decree. This appeal followed.

Defendants have submitted six issues to this court for our consideration. Counter-plaintiffs contend that the special chancellor erred: (1) in charging the jury that a payment by a third party to a creditor on behalf of the debtor was a payment toward the debt; (2) in allowing witness Don Kelly to testify as an expert witness when his qualifications as such were never established at trial; (3) in allowing plaintiff to introduce an automobile insurance policy of a family partnership to be considered as evidence of payment or credit towards the mortgage indebtedness; (4) in allowing witness Mary Mitchell to testify as to alleged payments and other credits on the mortgage debt made by nonparties; (5) in allowing plaintiff to testify in violation of the court's order in limine; (6) in failing to grant defendants a new trial. We are of the opinion that the special chancellor did err, and that a new trial is mandated by this record.

In 1973, following the death of her brother, Ham Mitchell, a prominent land owner in Millington, Prudence Reynolds ("decedent") sold her 142 acre farm to plaintiff, her nephew. In conjunction with the sale, plaintiff executed a promissory note in the principal amount of $134,140.71, payable to decedent. The note was secured by a first deed of trust on the property. The note called for payment to decedent in monthly installments of $1,040.00 for a period of 20 (twenty) years, along with interest at the rate of seven (7%) percent per year. The deed of trust was duly recorded in the Register's Office in Shelby County.

Following the death of his father, plaintiff and his two sisters, all beneficiaries of their father's estate, formed a partnership entitled "BAM Partnership." Subsequently, due to the partners' difficulty in paying inheritance taxes on their

2

father's estate, both plaintiff and the partnership filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee in Memphis.

Plaintiff filed an amended plan of reorganization in his Chapter 11 case in 1984. With respect to the payment of the debt to decedent, the amended plan made the following provision:

> The secured claim of Mrs. J.P. Reynolds ("Reynolds") shall be fully settled, satisfied, and discharged by paying to Reynolds the remaining sums due in accordance with the terms of her Promissory Note and Deed of Trust; except that, the terms of said Note shall be extended by a period equal to the number of months that said Note is in arrears. The first installment shall be due and payable upon confirmation with a similar payment being due and payable each month thereafter until said Note shall have been paid in full. Reynolds shall retain her lien upon the Debtor's 144 acre farm.
> (emphasis added)

Shortly thereafter, the bankruptcy court entered an order confirming plaintiff's amended plan of reorganization. During the period from April 1985 to March 1988, plaintiff wrote 16 checks totaling $26,548.57 to decedent in payment of this note. In addition, plaintiff sold 8.97 acres of the farm during this time, from which he paid decedent $804.68 of the proceeds.

In January 1988 plaintiff filed an interim report in his Chapter 11 case. In the section entitled "Total Amount of Claims Allowed," plaintiff's report reflected that the principal amount of the debt owed to decedent at that time was $102,902.28. This amount was listed as payment number 92 of a total of 240 on the mortgage loan amortization schedule. In his final report filed in November 1988, plaintiff set forth the same amount as the amount of the debt at that time. In January 1989, the bankruptcy court entered a final order closing plaintiff's Chapter 11 case.

Prudence Reynolds died in June 1988. Although named executor on her will, plaintiff declined to serve. Gerald W. Pickens was appointed executor. Some time later, plaintiff and Pickens met to discuss plaintiffs' obligations under the note. After

3

the parties were unable to agree upon the amount owed, Cole, as substitute trustee under the deed of trust, wrote plaintiff advising him that the entire balance of the principal and interest on the note was then due and payable. As of that time, the calculated principal and accrued interest on the note was $113,832.70, plus attorney's fees in the amount of $17,074.80. Plaintiff was advised that if the above amount was not paid by August 1, 1989, Cole would begin foreclosure.

On August 24, 1989, plaintiff filed a petition for a temporary restraining order and for a temporary and permanent injunction seeking to prohibit defendants from proceeding with the foreclosure. Plaintiff contended that as a result of an oral agreement he had made with decedent, the value of goods and services rendered to decedent by the BAM partnership, as well as cash payments made by the partnership to the decedent, were to be credited against the note. In that regard, plaintiff alleged that decedent had credited him with over 160 payments on the note prior to her death, which reduced the balance due to $66,330.18, and that he was entitled to have the correct balance of the note ascertained before a foreclosure sale could proceed. Shortly thereafter, a consent order on the temporary injunction was entered, enjoining defendants from foreclosing. Defendants then filed an answer as well as a counter-complaint.

In the counter-complaint, defendants alleged that plaintiff owed a balance on the note of $102,092.28, the stated principal loan balance that appeared in plaintiff's bankruptcy proceeding in both his interim report and the final report. In plaintiff's answer to the counter-complaint, he alleged that the amount of the balance due on the note was not as stated above, but that the amount due as alleged by defendants in their counter-complaint was included in error in his bankruptcy proceedings.

Prior to trial, the trial court granted defendants' motion in limine prohibiting plaintiff from presenting any evidence at trial concerning any oral statements

4

made by decedent prior to her death in regard to the note and deed of trust.[1] In addition, prior to trial the chancellor ordered that of the proposed factual issues presented by each party to be ultimately submitted to the jury, the chancellor ordered that plaintiff's issue of fact number 8 and defendants' issues of fact numbers 5, 7 and 8 be submitted at trial to the jury.

At trial, plaintiff testified that he and the decedent, his aunt, had a very close relationship and that her motivation in selling him the farm was to provide her with a continuous stream of income for the rest of her life. Although the court's order in limine prohibited plaintiff from testifying as to any oral statements made by his aunt concerning the note and trust deed prior to her death, over the repeated objections of defendants' counsel, plaintiff was allowed to testify concerning the various goods and services that the BAM partnership provided the decedent during her lifetime. Again over the same objections, plaintiff was permitted to testify that his bookkeeper kept records not only of cash payments made to decedent, but also would make notations on the amortization schedule of the note of the cash value of the goods and services provided to decedent from time to time through the BAM Partnership.

Following the overruled objections by defendants' counsel, plaintiff was permitted to testify that he provided wages and lodging for the grounds keeper of decedent at a cost of $250.00 per week for some eight years, totaling almost $40,000.00. Plaintiff also testified that through BAM he provided decedent with

---

[1]This case was upon the docket of four different chancellors by the time it came up for trial. It was originally assigned to the Honorable George T. Lewis, Chancellor of Part II, who recused himself because of his acquaintance with plaintiff. Chancellor Joe C. Morris, of Jackson, was thereafter designated as Special Chancellor. After the Honorable Floyd Peete was duly elected Chancellor of Part II, the case was transferred to him as the presiding chancellor. While obviously handled properly, at some point prior to trial, Chancellor Peete recused himself and Special Chancellor Russell Fowler was designated to try the case. When, how, and by whom Special Chancellor Fowler was designated is unknown as there is no order in the record.

automobiles over the years as well as providing her with insurance through BAM's fleet insurance policy.

Again, over objections of counsel for defendants, certain BAM employees were permitted to testify in a manner supportive of plaintiff's earlier testimony. Donald Kelly, a carpenter and maintenance man employed by BAM, testified that beginning in the 1960's, he made weekly visits to plaintiff's home to make both minor and major repairs, ranging from installing light bulbs to repairing the roof. He was also permitted by the chancellor, over the objections of defendants' counsel, to testify as an expert and give an opinion as to the value of the goods and services he supplied in this endeavor, without a full examination of his qualifications to testify as an expert witness.

Iwona Long, plaintiff's former personal secretary, and Mary Mitchell, who served as bookkeeper for plaintiff, the BAM partnership, Ham Mitchell, and the Ham Mitchell estate, both testified as to various amounts of cash payments and goods and services supplied to decedent and the notations they made of same on the loan amortization schedule. Mary Mitchell testified that at the end of each year, at plaintiff's request, she would give him a list of all the goods and services he had provided Mrs. Reynolds that year.

Defendant Pickens was the sole witness who testified on behalf of defendants. He stated that at the time of trial, based upon the amount of indebtedness listed by plaintiff in his final report in bankruptcy, plaintiff owed $102,790.23 as the balance of the principal due on the note, with accrued simple interest totaling $44,887.54, for a total of $147,677.77.

At the conclusion of all the proof, the chancellor instructed the jury as to the law that they should consider and other aspects of their deliberations. Included therein were three special instructions, the first two of which were submitted at the request of the defendants and agreed to by plaintiff, and the third was a special

6

request made by plaintiff, modified in part and accepted by the chancellor. They were as follows:

> Ladies and gentlemen of the jury, I further instruct you that the term ʻres judicataʼ . . . is defined in the law as a matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment.

> Ladies and gentlemen of the jury, I further instruct that the confirmation of a plan of reorganization by a United States Bankruptcy Court has the effect of a judgment of a United States District Court, and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.

> Ladies and gentlemen of the jury, a payment by a third party to a creditor on behalf of the debtor is payment towards the debt.

## I. The Jury Charge

While our Latin studies teach us that "all Gaul is divided into three parts," the special jury instructions given by the chancellor above at the request of the parties should be divided into two parts. The two special jury instructions given by the special chancellor at the behest of the defendants in essence told the jury that the confirmation of a plan of reorganization in a U.S. Bankruptcy Court had the same effect as a judgment of a U.S. District Court, and that res judicata would bar relitigation of any issues that were presented or could have been presented in the bankruptcy confirmation proceedings. The court explained to the jury what "res judicata" means—i.e., a thing or matter settled by judgment. As we have indicated earlier, these two instructions were approved by counsel for both parties.

Thereafter, in virtually the same breath, the chancellor told the jury that "a payment by a third party to a creditor on behalf of the debtor is payment towards the debt." In simple language, this instruction said to the jury that any payment by the BAM partnership to the decedent on behalf of plaintiff Mitchell constituted a payment towards Mitchell's debt to decedent. It is this instruction about which defendants strongly complain and which was given over their objections.

The effect of the confirmation of a plan of reorganization in a Chapter 11 Bankruptcy case is stated in 11 U.S.C.A. § 1141 (1993), which reads in pertinent part as follows:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor . . . and any creditor . . . [of] the debtor, whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan.

The federal courts have consistently upheld the finality of a confirmation of a bankruptcy. E.g., In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir. 1991). The Sixth Circuit stated as follows:

> Section 1141 is entitled "Effect of confirmation." Section 1141(a) lists categories of parties who are bound by the terms of confirmed plan. The effect of confirmation under the plan language of § 1141(a) is to bind all parties to the terms of a plan of reorganization.
>
> . . . Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.

Id. (citations omitted).

Plaintiff's interim and final reports in bankruptcy stated, under oath, in part that the principal amount of the indebtedness to Prudence Reynolds was $102,902.28. Plaintiff's amended plan of reorganization further stated that this debt to decedent was to be "fully settled, satisfied and discharged in accordance with her Promissory Note and Deed of Trust." Plaintiff's amended plan of reorganization was confirmed on June 13, 1984, by the Honorable William B. Leffler, Chief U.S. Bankruptcy Judge. Any credits that plaintiff contended that he was entitled to up to the filing of his amended plan of reorganization should have been and could have been presented to the bankruptcy court for consideration. It is apparent from the lack of any evidence in this case of plaintiff contesting the amount owed that

8

he completely and totally failed to do so.

Plaintiff contended in the trial court and contends in this court in his brief and oral argument that the balance of the loan as stated in his interim report and final report in his Chapter 11 case was a "mistake," arising from a misunderstanding with his attorneys in the bankruptcy case. As a result of this "mistake," plaintiff contends that he is not bound under the statutory and case law that we have cited herein to this amount. This contention is without merit. An argument by the debtor quite similar to this argument of plaintiff was rejected in In re Dooley, 116 B.R. 573, 578 (Bankr. S.D. Ohio 1990). In Dooley, the debtor challenged the amount allowed of a secured creditor's claim on the ground that the creditor did not properly give credit to the debtor's obligation to him on various preconfirmation payments. The court therein noted that debtor had the opportunity to challenge the amount of the allowed at two different confirmation hearings, and that the debtor submitted his amended his plan of reorganization over the creditor's objection. In rejecting this contention, the bankruptcy judge stated in part:

> The lengthy and often vigorously contested process leading to the confirmation of a debtor's proposed Chapter 11 Plan would become meaningless if the order confirming a debtor's plan was not accorded preclusive effect. For that reason, among others, a specific provision was enacted in Chapter 11 to statutorily strengthen the preclusive effect granted to a Chapter 11 confirmation order.
>
> . . . It is impossible to ignore the inclusion of the words "The provisions of a confirmed plan bind the *debtor*" in applying this section. One Bankruptcy Court noted, "It is the opinion of this court that § 1141 of the Bankruptcy Code means what it says and not only are the creditors bound by the confirmed plan, but the debtors are also so bound." (citations omitted)

Id. at 578-79.

To give even more finality to this conclusion, we cite Miller v. Meinhard-Commercial Corp., 462 F.2d 358, 360 (5th Cir. 1972), wherein that court stated in

part:

>An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court, and any attempt be the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine *res judicata.*

>. . . The suit is no more than a collateral attack upon the referee's order confirming the plan of arrangement; the integrity of the judgment is challenged. Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment.

>. . . *Res judicata* applies where the subject matter is the same, "not only to every matter which was offered and received to sustain or defeat the claim or demand, but also as to any other admissible matter which might have been offered for that purpose."

Id. at 360 (citations omitted).

We therefore conclude that the special chancellor erred when he gave plaintiff's special request as modified, thereby permitting the jury to consider plaintiff's credits against the note held by the decedent that were clearly precluded by the bankruptcy proceedings.

It now becomes necessary to decide whether this erroneous charge, more probably then not, affected the judgment of the jury. T.R.A.P. 36(b) provides that "A final judgment . . . shall not be set aside unless, considering the whole record, error . . . more probably than not affected the judgment." In reviewing the erroneous charge, it is appropriate to consider the charge as a whole in determining whether a prejudicial error has been committed. The specific instruction at issue must be considered in light of its context. Gorman v. Earhart, 876 S.W.2d 832, 836 (Tenn. 1994).

Viewing the record as a whole, the erroneous charge that the jury could consider payments made by a third party, BAM, to the creditor, decedent, on

behalf of the debtor, plaintiff Mitchell, in satisfaction of the debt, more probably than not affected the verdict. One of the decisive issues before the jury was the amount that Mitchell owed his aunt at the time the suit was brought. A substantial portion of plaintiff's proof focused on the various and sundry types of credits that were reportedly given, or should have been given, against his note to decedent in the form of services rendered the decedent by the BAM partnership and persons employed by the partnership, as well as other goods allegedly provided decedent by plaintiff as a member of the BAM partnership. All of this testimony was objected to and was subject to the defense of res judicata as a result of the plaintiff's confirmed amended plan of reorganization.

It is apparent to this court, from the record, that the jury took into account the plaintiff's testimony concerning the value of goods and services provided to the decedent by the BAM partnership. While the bankruptcy proceedings established that the principal amount plaintiff owed the note as of November 1988 was $102,902.28, the jury determined that the balance due on the note to decedent was only $41,101.64. Taking all this into account, the trial court's charge more likely than not influenced the jury in determining the balance due on the note in question. The judgment of the trial court therefore must be reversed.

As for the remaining evidentiary issues of defendants, we find that each and every one of them constituted error on behalf of the trial court. In light of the legal effect of res judicata of the bankruptcy court's orders and judgments, the evidence plaintiff sought to introduce concerning the value of goods and services provided by the BAM partnership was irrelevant, immaterial, and inadmissable. T.R.E. 402.

Upon remand, the scope of the hearing should be limited to the task of ascertaining the amount actually due and owing by plaintiff on the secured promissory note, plus accrued interest and attorney's fees. Taking as a beginning point the outstanding balance on the promissory note as stated in the bankruptcy

court's final order of November 1988, the trial court should ascertain the amount of payments, if any, made by plaintiff from the time of the final order of bankruptcy until the date of trial, plus all accrued interest to date.

Accordingly, the decree of the trial court is reversed and this cause is remanded to the Chancery Court of Shelby County for further proceedings not inconsistent with this opinion. Costs in this cause on appeal are taxed to plaintiff, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.


_____
LILLARD, J.                    (CONCURS)


HIGHERS, J., Not participating

IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

---

BILLY GWINN MITCHELL,

Plaintiff/Counter-Defendant/Appellee,

v.

SAM F. COLE, JR., Substitute
Trustee, ESTATE OF PRUDENCE
REYNOLDS, and GERALD W.
PICKENS,Administrator CTA,

Defendants/Counter-Plaintiffs/Appellants.

Shelby Chancery No. 97623-2 R.D.
C.A. No. 02A01-9503-CH-00060

**F I L E D**

October 3, 1996

Cecil Crowson, Jr.

Appellate Court Clerk

---

ORDER

---

Plaintiff has timely filed a petition to rehear in this cause. After full consideration the petition is respectfully denied.


ENTER this 3rd day of October, 1996.


_____
Hewitt P. Tomlin, Jr., Senior Judge


_____
Holly Kirby Lillard, Judge


Allen E. Highers, Judge
Not participiating