In re **GARSAL REALTY, INC.,** Debtor.

**GARSAL REALTY, INC., Sally Gross, as Trustee of the Trust for Karen Rosenthal, Sally Gross, as Sole Stockholder of Garsal Realty, Inc., Sally Gross as Sole Officer of Garsal Realty, Inc., and Sally Gross as Sole Director of Garsal Realty, Inc., Appellants,**

v.

The **TROY SAVINGS BANK and John J. Curran, Receiver, Respondents.**

Bankruptcy No. 81–00173.
84–CV–275.

United States District Court,
N.D. New York.

May 23, 1984.

---

Smith Sovik Kendrick Schwarzer & Sugnet, Syracuse, N.Y., for appellants; Laurence Sovik, Syracuse, N.Y., of counsel.

Pattison Sampson Ginsberg & Griffin, Troy, N.Y., for respondent, Troy Sav. Bank; Joseph Ball, Troy, N.Y., of counsel.

Ali, Pappas & Cox, Syracuse, N.Y., for respondent, John J. Curran, receiver; C. Andrew Pappas, Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Appellant, Garsal Realty, Inc. ["Garsal" or "debtor"], appeals from a decision of United States Bankruptcy Judge Leon J. Marketos issued December 16, 1983. Judge Marketos denied Garsal's motions seeking a continuance of the automatic stay, an extension of the time to exercise an option to purchase an interest in certain property, and summary judgment on the issue of receiver's and attorneys' fees. For the reasons set forth below, the decision of Judge Marketos is affirmed.

## BACKGROUND

■ Garsal is the owner of a large apartment complex valued in excess of $750,000. Respondent Troy Savings Bank ["Troy" or "Bank"] holds the first mortgage on the complex. In April, 1979 Garsal was in default of its mortgage payments and the Bank exercised its right to accelerate the loan.[1] When Garsal continued to default, the Bank brought a foreclosure action in New York State Supreme Court. The state court appointed respondent John J. Curran as receiver for the benefit of Troy. On February 11, 1981, the debtor filed a bankruptcy petition under Chapter 11 which stayed the foreclosure, but not before the state court had held that the Bank was entitled to the foreclosure, that the money that the debtor owed to the Bank included attorneys' fees incurred in collection, and that the debtor's defenses were frivolous.[2]

After the commencement of the bankruptcy proceeding the parties entered into extensive negotiations in an attempt to agree on a plan of reorganization. The negotiations were protracted with the parties reaching agreement on several occasions, only to have one of the parties repudiate the "settlement".

In November, 1982 the parties entered into a stipulation under which all of the debtor's purported defenses and counter-

---

1. Garsal contends that it was only $4,838.96 in default when the Bank accelerated its demand for the entire principal. The Bank contends that Garsal was $12,447.60 in default. The amount of the default, however, is irrelevant as the mortgage clearly gave the Bank the right to call in the mortgage if the debtor was in default for more than 10 days. It is undisputed that the debtor had been in default for greater than 10 days when the Bank exercised its option to accelerate the loan.

2. The goal in Chapter 11 Bankruptcy is to salvage viable businesses by reorganizing their finances and setting up a plan to pay back creditors. Once a debtor has filed for bankruptcy, the Bankruptcy Code provides for an automatic stay of all collection proceedings against the debtor. 11 U.S.C. § 362.

claims were dismissed with prejudice, the statutory automatic stay was vacated, debtor was given until January 14, 1983 to have a plan acceptable to the Bank confirmed, and the Bank was free to foreclose if such a plan was not confirmed by that date. A judgment implementing the stipulation was signed on December 1, 1982. The Reorganization Plan ["Plan"] was finally confirmed by Judge Marketos on January 18, 1983.

*The Reorganization Plan*

The Reorganization Plan provided for payment in full of the Bank's claim which consisted of the unpaid principal balance of $544,159.44, designated in the Plan as the "A" Principal, and the interest and other charges due to the Bank, designated in the Plan as the "B" Principal. The "B" Principal was subdivided into the "interest portion", consisting of interest accrued from the debtor's default in 1979 through the date of confirmation of the Plan, and the "non-interest portion", consisting of stated dollar amounts for late charges, attorneys' fees and disbursements, and other charges and expenses relating to the underlying foreclosure action and the bankruptcy proceeding itself.

The Plan also granted Sally Gross, as Trustee for the Trust of Karen Rosenthal, one of the proponents of the Plan and one of the appellants here, a six-month option to purchase the Bank's mortgage at an agreed-upon price. The price included the "A" Principal, with interest thereon from the date of confirmation, plus the "non-interest portion" of the "B" Principal.

The Plan provided that the receivership would continue until the Plan was confirmed, that the receiver would then submit his account to the bankruptcy court, that the receiver's commissions would be paid from the receivership funds, and that the debtor would offer no objection to the settlement of the receiver's account or to the discharge of the receiver. The Plan also

provided that the receivership funds would be used to pay the fees of the debtor's attorney.

At the confirmation hearing held on January 7, 1983 certain minor modifications of the Plan were made.[3] Garsal was the chief proponent of the Plan and seemed eager to have it confirmed. Garsal raised no objections to the Plan and the bankruptcy court approved the Plan as modified.

Thereafter the debtor let the option to purchase the mortgage expire. In October, 1983, several months after the option had expired, the debtor attempted to exercise the option to buy the mortgage. The Bank refused to honor the debtor's request but indicated that it would discuss offers for the purchase of its mortgage.

Garsal then brought the motions before Judge Marketos seeking to extend the deadline to exercise the option. Garsal alleged that Troy had attempted to "tack on" its attorneys' fees to the purchase price of the mortgage option, that the receiver was not entitled to any fees, that the bankruptcy court should have fixed Troy's attorneys' fees after notice and opportunity to be heard, that the receiver should file a final accounting and that the automatic stay should be reinstated. Judge Marketos denied all of the debtor's motions and this appeal ensued.

## DISCUSSION

■ As a preliminary matter the court notes that the debtor has characterized its motions as "in aid of administration" presumably to bring itself within the language set forth in the Plan governing reapplication to the court. The Plan states:

> Any interested party may at any time apply to the Court for assistance and instructions pertaining to the consummation of the Plan. However, the rights of Troy in the event of any default which shall remain uncured for at least 30 days,

3. Among the changes in the Plan was an agreement to reduce the attorneys' fees to be paid to the Bank's attorneys by $5,000 in order to make funds available for a payment towards Garsal's IRS liabilities. Despite this discussion focused

on the issue of attorneys' fees, Garsal raised no objection to the amount of attorneys' fees included in the Plan. Transcript of January 7, 1983 Bankruptcy Court Proceedings at 35.

including but not limited to the right to conduct a foreclosure sale, shall be absolute in the event of such uncured default, and no party shall have the right to prevent such foreclosure sale or to seek an order from any Court staying such foreclosure or in any way altering any other right of Troy.

Reorganization Plan, p. 12.

Garsal's motions are really in the nature of a collateral attack on the Plan itself and in no way can they be characterized as "in aid of administration." [4]

The general rule is that a confirmed plan of reorganization is binding on the debtor and other proponents of the plan. 11 U.S.C. § 1141(a).[5] *See also, Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1935); *Miller v. Meinhard-Commercial Corporation*, 462 F.2d 358 (5th Cir.1972); 5 Collier on Bankruptcy, ¶ 1141.-01, 1141–4 to 1141–7 (15th ed. 1979). The debtor has not presented to this court any valid reason why the Plan of Reorganization, a Plan proposed by the debtor and confirmed by the bankruptcy court on motion made by the debtor, should not be binding on it.

Since the Plan was confirmed the debtor has derived substantial benefits from it all—all of the debtor's attorneys' fees have been paid, a portion of the debtor's tax liability has been paid, and the debtor has been restored to possession and control of its apartment complex. Garsal had ample opportunity to challenge any portion of the Plan during the confirmation hearings, yet it took no action whatsoever until some 10 months after the Plan was confirmed. It is clear from the transcript of the final confirmation hearing that Garsal was the chief proponent of the Plan and argued strenuously that it should be confirmed. If Garsal believed that the attorneys' fees included as part of the "non-interest portion" of the "B" Principal were unreasonable it could have and should have challenged those fees before Judge Marketos at the confirmation hearings. Having failed to do so, and having derived benefits from the Plan, Garsal is equitably estopped from now denying the validity of the Plan.

Judge Marketos indicated in his opinion that he would decide the issue of the amount of receiver's fees due and owing after the parties presented further documentation to the bankruptcy court. This court expresses no opinion regarding the proper receiver's fee.

Accordingly, the decision of Judge Marketos is affirmed.

It is so ORDERED.

---

4. Although continuing to characterize its motions as "in aid of administration", Garsal states in its Reply Brief:

> The Court below retained jurisdiction in the order confirming the plan.... The Appellants therefore moved "In Aid of Administration of the Plan" to rectify and clarify the matter of these fees and expenses, the Receiver's claim, the Receiver's accounting, and the Proponent's option.... *The order was subject to change on due application.... Appellants have duly applied to change the plan and the order of confirmation* over the objection of the Bank that the order is not subject to change. [emphasis added]

Appellants' Reply Brief at 3–4.
If this is an attempt by Garsal to characterize its motions as motions for modification, the court holds that because such a characterization was not raised below before Judge Marketos it will not be considered here.

5. 11 U.S.C. § 1141(a) reads in relevant part:
> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, ... and any creditor ... of ... the debtor, whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.