**RIVERSIDE NURSING HOME,
a partnership, Debtor–
Appellant,**

**v.**

**NORTHERN METROPOLITAN RESI-
DENTIAL HEALTH CARE FACILITY,
INCORPORATED,** Intervenor–Appel-
lee,

**Rednel Tower, Ltd., Defendant–Appellee.**

**No. 1950, Docket 92–5039.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 10, 1992.
Decided Oct. 13, 1992.

Edward S. Rudofsky, New York City (Arlene H. Schechter, Zane & Rudofsky, New York City, of counsel), for debtor-appellant.

Donald Tirschwell, New York City, for intervenor-appellee.

Benjamin Zelermyer, White Plains, N.Y. (Laurence S. Moy, Serchuk & Zelermyer, White Plains, N.Y., of counsel), for defendant-appellee.

Before: WINTER, MINER and McLAUGHLIN, Circuit Judges.

WINTER, Circuit Judge:

Riverside Nursing Home appeals from Chief Judge Brieant's order directing it to sign a receiver agreement pursuant to a plan of reorganization ("the Plan") confirmed in Riverside's Chapter 11 bankruptcy proceeding. Riverside argues on appeal that: (1) the Plan was an unenforceable agreement to agree and (2) the district court erred in approving the receiver agreement. We disagree and affirm.

## BACKGROUND

Riverside, which leased the nursing home facility from R.H.N. Realty Corp., filed a petition under Chapter 11 of the Bankruptcy Code on June 3, 1982. On November 26, 1985, Citizens Savings Bank obtained a foreclosure judgment against R.H.N. Citizens was the only bidder at the foreclosure sale and assigned its bid to Rednel Tower, Ltd. On April 15, 1986, a deed was delivered to Rednel and recorded. On the same day, a judgment was entered in the foreclosure action terminating Riverside's tenancy. Riverside appealed without success, and Rednel thereafter moved to convert Riverside's Chapter 11 reorganization proceeding to a Chapter 7 liquidation. The Office of the United States Trustee had previously moved for conversion or dismissal because of Riverside's delay and inability to confirm a reorganization plan after more than six years of bankruptcy court protection.

To avoid conversion or dismissal, Riverside filed the Plan, which was confirmed. The Plan provides for the transfer of the Riverside Nursing Home facility either to a transferee approved by the New York State Department of Health ("Health Department") or to a voluntary receiver in accordance with Section 2810 of the N.Y. Public Health Law. Paragraph 5.06 of the Plan provides:

Thirty days after the effective date, [Riverside's] operations shall be turned over to a transferee designated by Rednel and approved by the New York State Department of Health and the Public Health Council of the State of New York. If a transferee has not been so approved, then subject to approval of a receiver agreement by the United States Bankruptcy Court for the Southern District of New York, [Riverside] shall then consent to the appointment of a voluntary receiver appointed pursuant to New York Public Health Law § 2810.

The Health Department did not approve Rednel's proposed transferee within the time limitation provided in the Plan. Pursuant to the second option under Paragraph 5.06, Rednel submitted a voluntary receiver agreement to Riverside that named Northern Metropolitan Residential Health Care Facility, Inc. as the receiver. This agreement was submitted for approval to the Health Department on November 17, 1989. In January 1992, the Health Department approved and signed the receiver agreement, which Rednel and Northern Metropolitan then also signed. The nursing home was now profitable, and Riverside refused to sign the agreement.

Rednel applied to the bankruptcy court for approval of the receiver agreement and for an order compelling Riverside to sign the agreement. Riverside opposed Rednel's application. On February 24, 1992, the bankruptcy court ruled that the receiver agreement "reasonably implements the provisions of [Riverside's] confirmed Chapter 11 plan and properly reflects the procedure necessary to obtain the appointment

of a receiver pursuant to New York Public Health Law § 2810." The bankruptcy court rejected Riverside's argument that the Plan was an unenforceable agreement to agree. The court held, however, that "Riverside need not execute the receiver agreement" because all that is required of the Plan "is that this court must initially approve a receiver agreement, after which [Riverside] 'shall then consent to the appointment of a voluntary receiver.'" The bankruptcy court held that Riverside's consent to the receiver was "a ministerial task which Riverside is bound to perform pursuant to its confirmed Chapter 11 plan." On February 28, 1992, the bankruptcy court entered an order directing Riverside to consent to the appointment of Northern Metropolitan as receiver.

Riverside appealed to the district court, which modified the receiver agreement and affirmed the bankruptcy court's order as modified. Further, the district court ordered Riverside to sign the modified receiver agreement. The district court also rejected Riverside's argument that the Plan was an unenforceable agreement to agree. The court stated that it would not "take the plain words in the plan that say that [Riverside] shall consent, and then read into that it's an agreement to agree." Because Riverside had drafted the Plan, the court stated that "[a]n agreement to agree is a nullity, and you don't likely assume that some lawyer intentionally drew one." The court thus read Paragraph 5.06 as "mandatory" and held that, if the bankruptcy judge approves a receiver agreement, Riverside must sign it.

## DISCUSSION

■ Riverside again argues before us that the Plan is an unenforceable agreement to agree. Its argument runs as follows. Paragraph 5.06 provides that, subject to the approval of the bankruptcy court, "the debtor shall then consent to the appointment of a voluntary receiver appointed pursuant to New York Public Health Law § 2810." Section 2810 in turn states that upon the request of an owner, the Health Department may take over a residential health care facility; "the depart-

ment may, if it deems such action desirable, enter into an agreement with any such owners on the appointment of a receiver to take charge of the facility under whatever conditions as shall be found acceptable by both parties." N.Y.PUB. HEALTH LAW § 2810(1) (McKinney 1985). Because the language quoted from Section 2810 appears to contemplate negotiations with the "owner," here Riverside, over the contents of a receiver agreement, Riverside argues that it agreed only to be a party to negotiations and the Plan is therefore an unenforceable agreement to agree. The argument is frivolous.

The Plan, drafted by Riverside and submitted to the bankruptcy court, clearly contemplated that Riverside would consent to the appointment of a receiver approved by the Health Department and the bankruptcy court, and to any underlying agreement pursuant to Section 2810 between that receiver and the Health Department. Had the Plan contemplated anything less, it could not have been confirmed. Certainly there was no reason whatsoever to allow Riverside to avoid conversion to Chapter 7 and to stay in possession in exchange for a meaningless promise to negotiate. We therefore agree with the district court that once the bankruptcy court approved the receiver agreement, Riverside was bound to consent to the appointment of the receiver. We will not disturb the "parties' unmistakable intent" to turn over the facility to a receiver where "it is plain that the parties intended this to be a complete and binding contract." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483, 485, 548 N.Y.S.2d 920, 548 N.E.2d 203 (1989) (holding that designating the Health Department to fix option price for purchasing nursing home did not defeat the contract under the definiteness doctrine), *cert. denied,* — U.S. ——, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990).

■ Moreover, even if the Plan were not clear on this point, it is established that, where, as here, the debtor has drafted the confirmed plan, has not objected to the provision at the confirmation hearing, and has derived benefits from the plan, the debtor is equitably estopped from denying the validity of the plan. *In re Garsal*

*Realty, Inc.,* 39 B.R. 991, 994 (N.D.N.Y. 1984), *aff'd,* 755 F.2d 913 (2d Cir.1985). Thus, Riverside cannot now challenge the Plan as an agreement to agree. Nor can Riverside refuse to sign the agreement. Chief Judge Brieant acted within his statutory powers in directing Riverside to sign. 11 U.S.C. § 1142(b) (1988).[1]

■ Riverside also argues that the bankruptcy and district courts failed to make findings that allow meaningful review because they did not rule on an alleged conflict of interest on Northern Metropolitan's part. Riverside, however, has never demonstrated that it would suffer any injury from the alleged conflict of interest, and we see no need for further inquiry on that issue.

Riverside's remaining arguments are meritless.

We affirm. The mandate shall issue forthwith.

---

1. Riverside alternatively argues that the district court erred in approving the receiver agreement because the district court failed to strike all terms more onerous or burdensome than the Plan. However, Riverside had a full and detailed hearing in which the district court heard and ruled on all objections. After the last disputed section of the agreement was discussed, and Chief Judge Brieant asked "What's next?" counsel for Riverside replied, "Judge, I think that would conclude the more onerous—inconsistencies, and omissions or additions to the proposed agreement that the Bankruptcy Court approved." In any event, Riverside has failed to show that any of the receiver agreement's terms are more onerous or burdensome on it than the Plan.