In re SHENANDOAH REALTY PART-
NERS, L.P., t/a Shenandoah Manor
of Clifton Forge, Debtor.

Shenandoah Realty Partners,
L.P., Plaintiff,

v.

Ascend Healthcare, Inc., Defendant.

Bankruptcy No. 5–96–00662.
Adversary No. 5–01–00027.

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

May 23, 2002.

Douglas Stark, Esq., Roanoke, VA, Counsel for Ascend.

Roy V. Creasy, Esq., Roanoke, VA, Counsel for Shenandoah Realty Partners.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

The issue before the court is whether a Chapter 11 debtor has standing to sue a plan proponent for failure to perform under the terms of a confirmed plan. For the reasons that follow, the court holds that a proponent of a confirmed plan is bound by its terms and that a debtor aggrieved by a plan proponent's non-performance has standing to seek redress in the bankruptcy court.

## BACKGROUND

On May 30, 1996, Shenandoah Realty Partners (hereinafter Debtor) filed a voluntary Chapter 11 petition under Title 11 of the United States Code. Nearly four years later, a corrected modified third amended plan of reorganization (hereinafter Plan) was proposed and filed in open court by Ascend Healthcare, Inc. (hereinafter Ascend). The court confirmed Ascend's the Plan on March 10, 2000.

The Plan consisted of eleven articles detailing the plan of reorganization and specifying the respective responsibilities of the Debtor and Ascend. Article III of the Plan, for example, requires the Debtor to preform its various statutory duties and those required under the Plan. Article V states that Ascend "shall acquire the Acquired Assets through a bond replacement or payoff." Specifically, Ascend was to tender $2,292,450.00 to bondholders in the form of cash and new bonds. The payoff was scheduled to occur within ninety days of confirmation. Tied to this asset acquisition, the Plan provided that, upon confirmation, Ascend "shall deposit ... an earnest money deposit of One Hundred Thousand and no/100 ($100,000.00)" with the trustee for the bondholders. The Plan specifically retained jurisdiction in the bankruptcy court "to enforce the provisions of this plan."

In response to the failure of Ascend to fulfill its obligations under the Plan, the Debtor entered into a contract with Smith/Packett Med–Com (hereinafter Smith/Packett) for the purchase of the Debtor's assets for $1,475,434.00. The court entered an order approving the sale of assets to Smith/Packett. Prior to consummating the sale with Smith/Packett, the Debtor filed this adversary proceeding.

In its amended complaint the Debtor sets forth three causes of action based on the allegation that Ascend refused or failed to perform its obligations under the Plan. In the first cause of action, the Debtor alleges that its "real personal property" [sic] is unique and requests the court to find Ascend in default under the Plan and to order Ascend to specifically perform, i.e., close on the purchase of the Debtor's assets.[1] Apparently, in the alternative, the Debtor seeks to recover $1,145,540.00, the difference between the asset purchase

---

1. Specifically, the Debtor requested the following relief in the first cause of action set forth in the amended complaint:

Wherefore the Plaintiff/Debtor prays that this court enter an Order determining the Defendant to be in default under the confirmed plan and to be required to specifical-

price under the Plan and the contract price for the same with Smith/Packett. Lastly, the Debtor seeks the unpaid $100,000.00 earnest money deposit as its third cause of action.

Ascend filed a motion to dismiss for failure to state a claim upon which relief can be granted, under Federal Rules of Civil Procedure Rule 12(b)(6).[2] Essentially, Ascend argues that Debtor lacks standing to seek recovery for the difference in the Plan price for the asset purchase and the contract price, and that the Debtor has no standing to seek recovery of the unpaid earnest money deposit.[3] In short, the Debtor has no enforceable interest in either the difference in the Plan and contract price for the sale of assets or in the unpaid earnest money because those funds were to be paid to or deposited with third parties not the Debtor.

## DISCUSSION

The issues before the court are two-fold: (1) whether Ascend is bound by the terms of the Corrected Modified Third Amended Plan of Reorganization and (2) whether the Debtor has standing to bring suit upon Ascend's failure to perform under the confirmed plan.

### The Effect of the Plan on Ascend

■ Section 1141 of the Bankruptcy Code addresses the effect of confirmation of a reorganization plan. In relevant part, § 1141(a) states

The provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

The unmistakably clear terms of the statute bind debtors and creditors to the plan.

ly perform the terms of the confirmed plan *and* close on the purchase of the assets of the debtor and be granted such other relief as it [sic] fit and proper (emphasis added). This prayer for relief is not altogether pellucid. For example, it is not clear whether the Debtor desires Ascend to specifically perform every obligation under the "terms of the confirmed plan" *and* to "purchase . . . the assets" or whether the Debtor seeks to have Ascend specifically perform by purchasing the assets. The former reading would be redundant since the purchase of assets are terms under the Plan. Thus, in order to avoid redundancies and in light of the allegations made in support of this cause of action, the court will treat the prayer for relief as requesting only specific performance regarding the purchase of assets. Under this interpretation, the court need not address the first cause of action since the assets of the Debtor have already been purchased by another entity, Smith/Packett.

2. Rule 12(b)(6) of Fed.R.Civ.P. is made applicable to adversary proceedings per Bankr.R. 7012. Accordingly, the allegations in the amended complaint are taken as true for the purposes of this motion.

3. In its motion to dismiss, Ascend reiterates numerous allegations in the amended complaint and argues that the Debtor lacks standing to bring those claims. Specifically, Ascend purports to discuss paragraphs 4A through 4H in the amended complaint; however, the aforesaid allegations are actually located in paragraphs 3A through 3H of the amended complaint. The court notes that the Debtor has not clearly requested relief based on all the allegations in paragraphs 3A through 3H, but instead has limited its prayer for relief thusly: 1) specific performance regarding the asset purchase; 2) damages to the extent that the contract price for the sale of assets to Smith/Packett is less than the Plan price; and 3) $100,000.00 for the unpaid earnest money deposit. The court need not consider the arguments raised by Ascend that do not touch upon the Debtor's allegations upon which relief has been specifically requested, e.g., the assumption of certain leases.

The questions remains, however, as to the effect of a confirmed plan on third party plan proponents like Ascend.

In 1984, the District Court for the Northern District of New York stated "[t]he general rule is that a confirmed plan of reorganization is binding on the debtor and other proponents of the plan." *In re Garsal Realty, Inc. (Garsal Realty, Inc. v. Troy Sav. Bank)*, 39 B.R. 991, 994 (N.D.N.Y.1984). This pronouncement was repeated by the Tenth Circuit when it undertook to determine whether a Chapter 7 trustee has a cause of action based on a failed Chapter 11 reorganization. The trustee brought suit against a proposed participant of a plan of reorganization who was not a creditor and who was not a plan proponent or party in interest. *Paul v. Monts*, 906 F.2d 1468, 1469 (10th Cir. 1990).[4]

In *Paul v. Monts*, the debtor's confirmed plan contemplated that Travenca, a third party, would assume certain outstanding loans of the debtor and would provide $2,500,000.00 of new capital to the debtor. In exchange for such, Travenca would be given stock, title to certain property, and a lease. After the plan was confirmed the parties disagreed as to their respective responsibilities under the plan. The bankruptcy court eventually determined that the debtor did not implement the terms of the plan and converted the case to a Chapter 7 liquidation proceeding. The Chapter 7 trustee then filed a declaratory judgment action to determine if any defendants breached their obligations under the plan.

The court first addressed whether the terms of the confirmed plan bound Travenca, a third party. The court quoted the general rule from *Garsal* and recognized that neither "proponents of the plan" nor "parties in interest" have been defined in reported cases.[5] *Id.* at 1471–72. The court rejected the trustee's assertion that a mere third party participating in a plan was bound by the terms of that plan. In other words, the Tenth Circuit implicitly held that Travenca was not a proponent of the plan or a party in interest; therefore, Travenca was not bound by the plan.[6] Travenca would not be bound unless it agreed to be bound by the plan or until it became a party in interest by acquiring property under the plan. *See Quarles v. Smith*, 1997 WL 578707, *6, 1997 U.S. Dist. LEXIS 13992, *15 (W.D.Va.1997) (discussing *Paul v. Monts*).

Despite a finding that 11 U.S.C. 1141(a) did not bind Travenca, the court ultimately held that the Bankruptcy Code did not preempt an action against Travenca under general contract law. The court stated that the remedies provided within the

---

4. *See also United States Trustee v. Craige (In re Salina Speedway)*, 210 B.R. 851 (10th Cir. BAP 1997) (stating rule that proponents are bound by a confirmed plan).

5. While analyzing the definition of "parties in interest," the Tenth Circuit discussed the generally accepted definition of "interest" and what it means to "acquire property under the plan." This analysis is not applicable to the matter *sub judice* since the disposition of the matter here does not depend on whether Ascend is a party in interest or a party that acquired property under the plan. As will be shown, Ascend is undisputably the proponent

of the Plan and is bound by the Plan in that respect.

6. Ascend's characterization of Travenca as a plan proponent is incorrect. *See* Defendant's Response to "Plaintiffs Memorandum in Opposition" at 2. The Tenth Circuit describes Travenca as a "third party investor" and a plan "participant." *Paul v. Monts*, 906 F.2d at 1469, 1471 & 1474. The court points out that the debtor filed the plan. *Id.* at 1470. Travenca never signed the plan nor submitted to the jurisdiction of the bankruptcy court. *Id.* at 1471 n. 3.

bankruptcy Code were not exclusive and that redress may be sought through a breach of contract action premised on the plan of reorganization. *Paul v. Monts,* 906 F.2d at 1474 & 1476.

In the instant case, the court believes that Ascend is bound by the terms of the Plan. Ascend is a proponent of a plan as that term is understood by this court. Under the facts here, the court need not rely on case law to interpret "proponent of the plan." Ascend proposed the Plan here and even defined itself as the "Proponent." Under the rule announced in *Garsal* and repeated in *Paul v. Monts,* both the Debtor and Ascend are bound by the Plan.

■ It is generally accepted that a confirmed plan is essentially a binding contract. Indeed, a confirmed plan substitutes the obligations of the plan for the debtor's pre-confirmation debts. *See In re Page,* 118 B.R. 456, 460 (Bankr.N.D.Tex. 1990) ("The plan becomes a binding contract between the debtor and the creditors and controls their rights and obligations.") (citation omitted). Ascend is unable to escape its obligations under the Plan.

### Debtor's Standing to bring Suit for Default Under the Plan

■ As mentioned above, the Debtor's suit alleges that Ascend failed to comply with the terms of the Plan. Although Ascend is bound by the terms of the Plan, it challenges the Debtor's standing to bring this suit. Ascend contends that the proceeds from the asset purchase were payable to the bondholders, not the Debtor; thus, the Debtor has no legally enforceable interest in these proceeds. Similarly, Ascend asserts that the Debtor lacks standing to enforce payments (the earnest money deposit) the Plan requires Ascend to make to the bondholders' trustee.

■ The doctrine of standing arises from the constitutional requirement that federal courts hear actual cases and controversies. Standing ensures that plaintiffs have a sufficient stake in the outcome of a dispute. In order to meet the minimal constitutional requirements of standing, a plaintiff must demonstrate (1) injury in fact, (2) traceability, and (3) redressability. *See Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Friends for Ferrell Parkway v. Stasko,* 282 F.3d 315, 320 (4th Cir.2002).

■ Even if a plaintiff satisfies the constitutional requirements for standing, there are prudential standing requirements a plaintiff must meet as well. These "judicially self-imposed limits on the exercise of federal jurisdiction," are based on a desire to preserve the proper role of courts in a democratic society. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In cases where a plaintiff alleges violations of a statutory right, the standing issue is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Another prudential limitation on standing is the third party standing rule which "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin,* 422 U.S. 490, 509, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

As statutory authority to bring its suit the Debtor cites 11 U.S.C. § 1142 and Bankr.R. 3020. 11 U.S.C. § 1142 entitled "Implementation of the Plan" provides

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or reg-

ulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Bankruptcy Rule 3020 provides that the court may issue any order necessary to the administration of the estate.

Ascend appears to be contending the neither the Bankruptcy Code nor Virginia contract law recognize the Debtor's standing to sue Ascend for obligations it owes to third parties under the Plan.[7] In support of its position that standing is lacking, Ascend cites *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) and *In re Sports Accessories, Inc.*, 1987 WL 37009 (4th Cir.1987) (unpublished disposition).

In *Caplin,* the Supreme Court held that a trustee in a reorganization under the Bankruptcy Act does not have standing to assert, on behalf of persons holding debentures issued by the debtor, claims of misconduct by the indenture trustee. Allegedly, the indenture trustee negligently or intentionally failed to prevent the debtor from violating the terms of the indenture, i.e., maintain a specific asset-liability ratio. The apparent cause of action against the indenture trustee was based on a violation of the indenture and of the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa *et seq.*

The Court rejected the trustee's assertion of these claims for three reasons. One, the Court stated that nowhere in the reorganization statutory scheme is the trustee given responsibility to sue "third parties on behalf of debenture holders." *Caplin,* 406 U.S. at 428, 92 S.Ct. 1678. The Court also noted that the section of the Act outlining the trustee's rights and duties does not enable it to collect money not owed to the estate. Two, the Court was troubled that the debtor was unable to make a claim against the indenture trustee because of the doctrines of *in pari delicto* and subrogation. The debtor was as much at fault as the indenture trustee for the harm suffered by creditors. Third, and finally, the Court disfavored the inconsistencies and complications that may ensue by allowing suits to be brought by trustees on behalf of debenture holders and by debenture holders individually. For these reasons the Court concluded that Congress did not invest the trustee with standing to sue an indenture trustee on behalf of debenture holders.

The court believes *Caplin* is readily distinguishable from the matter here. In *Caplin* the trustee was attempting to sue, on behalf of creditors, a third party for violating provisions of the Trust Indenture Act. The case did not involve a plan proponents's failure to comply with a confirmed plan. Here, the Debtor is not asserting a claim, on behalf of creditors, against Ascend for violating some independent statute; rather, the Debtor is alleging that

---

7. Ascend does not appear to be arguing that the Debtor lacks standing under the minimal constitutional requirements. Ascend failed to even suggest that injury-in-fact, traceability, or redressability are lacking. In a memorandum in support of dismissal Ascend states "[d]oes the Debtor have standing to enforce the monetary obligations of Ascend to third parties under the Plan." Defendant's Memorandum of Law in Support of Motion to Dismiss at 3.

Ascend defaulted under the Plan by, *inter alia,* not paying certain obligations of the Debtor to its creditors. In *Caplin,* the debtor's reorganization was not directly stymied by the actions of the indenture trustee. Here, Ascend's failure to fulfill the terms of the Plan, leaves the Debtor with large outstanding obligations which would have been otherwise reduced by full compliance with the terms of the Plan.

In *In re Sports Accessories, Inc., supra,* the Fourth Circuit held that a bankruptcy trustee lacked standing to pursue, on behalf of aggrieved creditors, what appears to have been a professional malpractice claim. The trustee brought a suit against the accounting firm of the debtors for knowingly preparing materially false financial statements that creditors would rely on when making decisions to extend credit. The court's analysis began with the following statement: "Generally, trustees in bankruptcy are unauthorized to sue third parties on behalf, or for the benefit, of the creditors of the bankrupt estate." *In re Sports Accessories, Inc.,* 1987 WL 37009 at *1. The court further recognized that the bankrupt estate had no interest in the suit and that no portion of the recovery would be payable to the bankrupt estate or enhance its assets in any way. *Id.*

This case is not helpful primarily because it does not discuss the impact of a plan proponent's default under a confirmed plan. The *Sports Accessories* holding that a trustee cannot sue a third party who, acting on a debtor's behalf, provides services that harm creditors, but does not directly hamper the debtor's ability to effectuate the terms of a confirmed plan, does not help Ascend's position that the instant Debtor lacks standing to bring this suit. Ascend is a proponent of a plan and is bound by the terms of the Bankruptcy Code to comply with the terms of the Plan. Moreover, Ascend's compliance with the Plan would clearly benefit the bankrupt estate by paying the Debtor's outstanding obligations to bondholders as provided for in the confirmed plan.

The Debtor is clearly bound by the Plan, as is Ascend. The Debtor's standing to enforce the terms of the Plan vis-à-vis Ascend derives from the parties being mutually bound to fulfill their respective obligations under the Plan. Among other things, Ascend agreed to acquire certain assets and to pay preconfirmation obligations the Debtor owed to bondholders. In return, the Debtor agreed to sell assets to Ascend and to comply with the terms of the Plan. The Plan worked as a contract between the parties. When viewed through the eyes of the Debtor, the action here is not an attempt to collect funds on behalf of third parties (the bondholders); on the contrary, the Debtor is seeking to ensure that Ascend pays obligations the Debtor owes to third parties. Furthermore, the Plan contemplated that this court would retain jurisdiction to enforce the terms of the Plan. The court finds that the Debtor has standing to bring suit to enforce these binding obligations.

■ Ascend also contends that under Virginia law actions grounded in contract must be brought by the promisor or the promisee, since they are the parties in whom the legal interest is vested. As a general proposition this is true, but Ascend's position ignores the widely understood and accepted doctrine of intended third party beneficiaries. Under Virginia law "the third party beneficiary doctrine is subject to the limitations that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Professional Realty Corp. v. Bender,* 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976). Here, by the terms of the Plan (or by the terms of

the contract), Ascend obligated itself to purchase the Debtor's assets and to pay $2,292, 450.00 to bondholders of the Debtor. The benefits derived by the Debtor from Ascend's performance are obvious and beyond the need for explanation. Clearly the Debtor was intended to directly benefit from Ascend's fulfilling the requirements of the Plan.[8]

## CONCLUSION

Based on the foregoing analysis, the court holds that Ascend, a proponent of a confirmed Chapter 11 plan, is bound by the terms of the plan. The court also holds that the allegations in the amended complaint, taken as true, sufficiently establish the Debtor's standing to bring the instant action.

Accordingly, it is

## ORDERED:

That the Motion to Dismiss Amended Complaint For Failure to State a Claim upon which Relief can be Granted is DENIED.

---

**8.** The court recognizes that any recovery the Debtor may acquire at the conclusion of this adversary proceeding would need to be disbursed to the parties as contemplated by the Plan. For instance, if the Debtor succeeds on its claim to recover the difference in the price for the sale of assets paid by Smith/Packett and the price Ascend was to pay under the Plan, then the Debtor would be required to pay those funds to the bondholders as contemplated by the Plan.